Eddie PORTER, Appellant,

v.

STATE of Indiana, Appellee.

No. 177S14.

Supreme Court of Indiana.

July 3, 1979.

Rehearing Denied Aug. 31, 1979.

Edwin S. Sedwick, Sellersburg, for appellant.

Theo. L. Sendak, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Appellant Porter was charged in an indictment by the Clark County Grand Jury with two counts of inflicting injury in the commission of a robbery, armed robbery and felony murder. Following a change of venue, appellant was found guilty on all counts by a jury in the Brown Circuit Court on August 6, 1976. He was accordingly sentenced to a term of thirty years in prison for armed robbery and to terms of life imprisonment on the other three counts.

Appellant presents twenty-one issues for our review concerning:

(1) The trial court's failure to grant appellant's motion to dismiss the grand jury.

(2) The trial court's failure to grant appellant's motion to suppress statements made by appellant Porter to the police.

(3) Denial of appellant's motion for severance.

(4) Admission into evidence of statements of the appellant before the corpus delicti had been established by the State.

(5) Admission into evidence of testimony of witness Gerald Hays regarding recorded conversations with appellant.

(6) Allowing witness Hays to read from transcripts of appellant Porter's statements.

(7) Denial of appellant's right to cross-examine Gerald Hays.

(8) Admission of testimony regarding alleged plea negotiations.

(9) Permitting State's witness Gwin to testify as to conclusions.

(10) Refusal of the trial court to grant a mistrial following witness Cardwell's reference to an escape from the Clark County Jail.

(11) Admitting evidence of appellant Porter's jail-breaking attempt.

(12) Error in the admission into evidence of Exhibits 15 through 34.

(13) Error in the admission into evidence of Exhibits 15 through 18.

(14) Error in the admission into evidence of Exhibits 29–32.

(15) Including State's instructions number 11 and 12 in the final instructions to the jury.

(16) Refusing to give appellant's tendered instruction number 7.

(17) The Court's refusal to allow appellant Porter to re-cross-examine the State's witness Violet Porter.

(18) Failure to sustain appellant's objection and challenge to the panel of prospective jurors.

(19) Overruling of appellant's defendant's challenge for cause of certain tentative jurors.

(20) The sufficiency of the evidence.

(21) Sentencing defendant on Count III of the indictment.

The evidence adduced at trial revealed that Martha and Ballard Keeling owned and operated a grocery store in Underwood, Indiana, Clark County, under the name of "Keeling's Underwood Supermarket." The Keelings lived directly across the street from their store. It was Ballard Keeling's general practice to arrive at the store each morning between 6:15 and 6:45 a. m., and to remain there alone until Martha came to the store at approximately 7:00 to 7:30 a. m. On the morning of February 28, 1975, Ballard Keeling was killed during an attempted robbery of his store about the time that Martha Keeling was arriving for the morning. Martha Keeling was also wounded, as well as one Richard Quick, a bread delivery man and witness to the incident.

I.

Porter filed a pre-trial Motion to Dismiss on the ground that he was not given an opportunity to challenge the grand jury pursuant to Ind.Code § 35–1–15–11 (Burns 1975) which provided:

"A person held to answer a charge for a felony or misdemeanor may challenge an individual grand juror, before the jury is sworn, for one or more of the following causes only:

First. That such individual grand juror is under the age of eighteen (18) years.

Second. That he is not a freeholder or a householder of the county.

Third. That he is an alien.

Fourth. That he is insane.

Fifth. That he is the prosecuting witness upon a charge against the defendant.

Sixth. That he is a witness on the part of the prosecution.

Seventh. That such a state of mind exists on his part in reference to the party charged that he cannot act impartially and without prejudice to the substantial rights of the challenger.

Eighth. That he holds his place in the grand jury by reason of the corruption of the officer who selected and impaneled the grand jury.

Ninth. That he is in the habit of becoming intoxicated.

Tenth. That he has requested, or caused any officer or his deputy to be requested, to place him upon the grand jury."

█ The record shows that appellant knew his cause was to be placed before the grand jury prior to the time it was sworn, and raised no question as to the composition of the grand jury until he filed his Motion to Dismiss on January 6, 1976, nearly a year after the indictments had been returned. He does not now claim that any of the grand jurors were subject to any statutory causes for challenge noted above. He complains only that he was not given an opportunity to challenge them before they were sworn as a grand jury. We have previously held that when one knows he is to be held to answer a charge before a grand jury and fails to make a request to appear before the court at the impanelling of the grand jury, he waives his right to challenge the jury. *King v. State*, (1957) 236 Ind. 268, 272–73, 139 N.E.2d 547, 549–50; *Sisk v. State*, (1953) 232 Ind. 214, 219, 110 N.E.2d 627, 629, *cert. denied* (1953) 346 U.S. 838, 74 S.Ct. 60, 98 L.Ed. 360. *Compare McFarland v. State*, (1978) Ind., 381 N.E.2d 85. Accordingly, the trial court properly overruled his Motion to Dismiss on these grounds.

## II.

The evidence shows that the police talked to this appellant on the day of the occurrence, February 28, 1975, in the vicinity of the mobile home trailer in which he lived. After talking to him for a short time, the State Police arrested him for public intoxication and took him into custody. Later that same day, he was served with a warrant charging him with the offenses under review here. Approximately three weeks later, on March 25, 1975, the defendant gave to the police the self-incriminating statements that are in question here.

The defendant sent word to the prosecuting attorney, Gwin, that he wished to make a statement regarding this incident. The prosecutor and Officer Gerald Hays then went to the jail and had conversations with the defendant, which were, in part, put into evidence in this cause. The conversations between Porter and Hays, in the presence of Prosecutor Gwin, were preserved in a tape recording, which was then transcribed into typewritten pages. The recording and transcription were both available in court but were not put into evidence. Officer Hays testified as to parts of the statements given to him in which appellant Porter admitted being at the scene of the crime and admitting participating in it. The evidence was presented in this manner to protect the rights of co-defendant James Deaton, who was tried jointly with this defendant. All references to Deaton were redacted entirely from the statement summaries given to the jury, so that defendant Deaton would not be incriminated in any manner by the statements of appellant Porter. Porter claims these statements were inadmissible for several different reasons. We shall proceed to deal with those arguments.

██ The question of the admissibility of confessions is, of course, to be controlled largely by determining from the totality of the circumstances whether or not they were made voluntarily. We review these questions on appeal as we do other sufficiency matters. That is, we do not weigh the evidence, but rather determine whether there is substantial probative evidence to support the trial court's finding that the

statements were made voluntarily. *Richardson v. State*, (1978) Ind., 373 N.E.2d 874, 875; *Murphy v. State*, (1977) Ind., 369 N.E.2d 411, 414.

The evidence shows that before the police questioned appellant about this incident on the night of March 25, 1975, they advised him of his *Miranda* rights by discussing them with him orally and presenting them to him in writing. Before discussing the facts of this case with the police, appellant stated that he understood these rights and also signed waiver forms. In addition, Porter was fully advised of his rights many times prior to this date: first on the day of his arrest on February 28, 1975, and several times thereafter.

■ The appellant first claims these confessions should not have been admitted into evidence because his arrest was illegal. He argues that the police did not have probable cause to arrest him for public intoxication, and that, in truth, they arrested him as a suspect in this crime. Thus, the argument runs, the original illegal arrest continued to taint his custody even as to the March 25th confessions he made to the police. As authority for this proposition, appellant cites *Brown v. Illinois*, (1975) 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416, and *Williams v. State*, (1976) 264 Ind. 664, 348 N.E.2d 623. Those cases clearly hold that if probable cause for the initial detention is lacking, or if the initial detention is otherwise illegal, any confession obtained as a result thereof should be suppressed, unless the confession is a product of the individual's free will. In *Williams, supra*, we noted the factors established by *Brown v. Illinois, supra*, which are relevant in determining whether or not a confession is a product of a free will. These factors are: (1) whether the individual was informed of his rights as required by *Miranda v. Arizona*, (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; (2) the temporal proximity of the arrest and the confession; (3) the presence of intervening circumstances; and (4) "particularly, the purpose and flagrancy of the official misconduct." *Brown v. Illinois*, 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416, 427.

■ Witnesses testified at the hearing on the Motion to Suppress that when the police approached Porter on the morning of February 28, he smelled of alcohol, appeared and acted unstable, and had the general appearance of intoxication, such as watery eyes, slurred speech and unstable stature. He further displayed an uncooperative and hostile attitude to the police officers. Since the police officers observed this behavior in a public place, they did have grounds to arrest him for public intoxication. That appellant was a suspect in this cause at the time and was under consideration in the police investigation of this crime does not make the arrest for public intoxication illegal or improper.

Furthermore, it does not appear even remotely possible that the detention occasioned by this arrest had any influence on appellant's decision to make a statement to the police. The statement under consideration was given on March 25, three weeks after his arrest. In that three week period, appellant had been before a magistrate, had had an attorney appointed for him, and had discussed these matters with his attorney. His original arrest bore no relationship whatsoever to the giving of his statements to the police on March 25.

Appellant next argues that his confessions were involuntary because they were given in exchange for promises and in response to threats. He contends that prior to March 25, 1975, the police told him he could receive the death penalty for conviction of the crimes with which he was charged. He further claims that the prosecutor, Gwin, promised him he would receive a sentence of life imprisonment rather than the death penalty if he would tell Gwin the truth and testify for the State.

On February 28, 1975, appellant was questioned by Officer Hays and other police officers regarding the charges under consideration here. In doing so, the officers explained to him the nature of the charges and the penalties provided therefor. These conversations were also tape recorded, and the trial judge was able to hear the tapes.

On March 25, when Gwin and Hays came to the jail to talk to appellant, Gwin did tell appellant that if he told the truth and testified for the State, then the State would guarantee him that the penalty would not be more severe than life imprisonment. The trial court heard all of this evidence and determined that the discussion on February 28, in which the police explained to appellant the nature of the acts with which he was charged and the penalties therefor, were not in the nature of threats made to him to induce him to confess to this crime out of fear. Furthermore, the commitment by the prosecuting attorney after he arrived at the jail was made *after* appellant stated that he wished to tell him about the incident, and thus could not have amounted to a promise that would have affected the voluntariness of the statements given by appellant. In view of the facts and circumstances of this case, we find that there was ample evidence for the trial court to make this finding, and find no error in his doing so.

■ The fact that Gwin and Hays did not contact appellant's attorney and have him present at the jail when the statement was given does not render the evidence inadmissible. Gwin asked appellant if he had counseled with his attorney and appellant told him he had. He told Gwin he wanted to talk to him that night and make a statement regarding this incident, and Gwin testified at the suppression hearing that under those circumstances, considering the attitude of the defendant, he saw nothing wring in talking with Porter. Again, the trial court had ample evidence before it, under our law, to reject appellant's arguments and admit the statements. *Walls v. State*, (1977) Ind.App., 368 N.E.2d 1373. *See Murphy v. State*, (1977) Ind., 369 N.E.2d 411, 415. We find no error here.

### III.

■ Appellant Porter next argues that the trial court erred in not granting him a trial separate from that of his co-defendant, James Deaton. He contends that the majority of exhibits admitted into evidence at trial were directed against Deaton and not appellant; that eyewitness testimony established that Deaton actually did the shooting; and therefore, that appellant was prejudiced by being tried to the same jury that heard this evidence. In order to carry his burden on this issue, appellant must show that in light of what actually occurred at trial, the denial of a separate trial subjected him to such serious prejudice that the trial court may be said to have abused its discretion in denying his motion for severance. *Ortiz v. State*, (1976) 265 Ind. 549, 561, 356 N.E.2d 1188, 1195. *See Frith v. State*, (1975) 263 Ind. 100, 325 N.E.2d 186.

■ Although we will discuss a great many of the exhibits entered into evidence later in this opinion, for purposes of this issue we can state that appellant is not accurate in asserting that the multitude of exhibits put into evidence were directed at Deaton rather than himself. The exhibits showed the scene of the crime, injuries to the victims, and the weapons used, and dealt with the commission of the crime generally. It is true that there were certain eyewitnesses to the crimes who identified Deaton as the actual perpetrator. However, it is also true that witnesses testified as to Porter's involvement in the acts as well. In fact, Porter's own statements indicating his involvement and his guilt in this matter were admitted into evidence, as pointed out earlier in this opinion, and were the only statements or confessions admitted in the entire trial. Therefore, we cannot say, under the facts and circumstances of this case, that the court abused its discretion by failing to grant a severance to appellant. *White v. State*, (1975) 263 Ind. 302, 308, 330 N.E.2d 84, 87.

### IV.

■ Appellant next argues that the trial court erred in admitting his statements into evidence, inasmuch as the corpus delicti had not been proven or established. To establish the corpus delicti, independent evidence must be presented showing the occurrence of the specific kind of injury and that a criminal act was the cause of the

injury. For the preliminary purpose of determining the admissibility of a confession, the corpus delicti need not be proven beyond a reasonable doubt and may be established by circumstantial evidence. *Hudson v. State*, (1978) Ind., 375 N.E.2d 195, 196. The crime charged here is that of felony murder. Thus, to establish the corpus delicti, it was necessary to demonstrate that a robbery attempt had occurred, that a human being had been killed during this robbery attempt, and that the robbery attempt and homicide had been committed by someone. *See Jones v. State*, (1964) 244 Ind. 682, 686, 195 N.E.2d 460, 462.

We have also remarked that "although it is desirable to first establish a corpus delicti before showing a confession or statements against interest by the defendant, such is not necessary. The matter of the order of proof is within the sound discretion of the trial court." *Garr v. State*, (1974) 262 Ind. 134, 137, 312 N.E.2d 70, 71–72. The testimony of Mrs. Keeling and Richard Quick established sufficient evidence for the purposes of this issue. In addition, there were other witnesses and many exhibits that showed the scene of this crime, the injured body of Ballard Keeling, and reports of how he met his death. The corpus delicti, therefore, was not proved by the confession of appellant, but by independent evidence. There was no error on this issue. *See Hammond v. State*, (1962) 240 Ind. 313, 164 N.E.2d 640; *State v. Johnson*, (1960) 31 N.J. 489, 158 A.2d 11.

## V.

■ We treat the fifth and sixth issues raised by appellant together, as both are directed toward the manner in which State's witness Hays testified as to the statements given to him by appellant Porter. Outside the presence of the jury, the trial judge and counsel for the parties agreed to deletions made in the transcripts of Porter's statements to insure that co-defendant Deaton's confrontation rights would not be violated by references made by Porter about Deaton's involvement in this crime. Neither the tapes nor the transcripts of them were offered in evidence before the jury. Officer Hays testified that he recalled having the conversations with appellant Porter, but that he did not recall the conversations to the extent that he could accurately state what was said by appellant. After examining these statements, he further stated that he could not testify from memory as to their content. He did testify, however, that he had listened to the tapes after having the conversations with Porter had examined the transcripts of the tapes, and could testify that the transcripts accurately reflected what was said in the conversations that he took part in and in the tape recordings that he made at that time. On this basis the trial judge permitted Hays to testify about the conversations, to use the transcripts for reference, and to actually read some portions of them. Appellant claims this was improper, arguing that a proper foundation was not laid by the State in accordance with *Lamar v. State*, (1972) 258 Ind. 504, 282 N.E.2d 795. The trial court properly overruled objections on those grounds.

■ The *Lamar* case involved the admission before the jury of a sound recording that was not clearly audible and intelligible. This Court stated that a defendant could be put in grave peril if portions of the tape recording put in by the State were difficult or impossible to understand, since the jury could only assume from the fact that the State offered the exhibit that it contained information prejudicial to the defense. That rule is not applicable here. First of all, *Lamar* dealt with the foundation necessary for admitting tape recordings into evidence. Neither the recordings nor transcripts were put into evidence here, nor was the jury led to understand, in contrast to *Lamar*, that, essentially, only certain parts of the conversations were being presented to them. Hays did not testify in a manner which could have given the impression that he was leaving out some of the conversations. In addition, even if the jury were able to get this impression, it cannot be presumed that they were also given the impression that the parts omitted

were prejudicial to the defendant. The evil which *Lamar* addressed involved placing before the jury evidence which was not understandable and therefore subject to speculation and assumption as to its content. However, unlike *Lamar*, none of the evidence presented to the jury in this case was subject to speculation as to its actual content. The jury would have speculated, if at all, about portions of the conversations which were *not* presented to them. And, since this evidence came in through the State's witness, the presumption which would follow is that any portion of the conversations which was omitted was favorable to the defense. There was no prejudice to appellant in permitting the witness to testify to these conversations in the manner in which he did.

### VI.

After Officer Hays had testified as to his conversations with appellant Porter, the following took place during cross-examination by Porter's counsel, attorney Sedwick:

"Mr. Sedwick: Thank you. Officer Hays, when Mr. Porter told you this about being threatened with a pistol was he referring to February 28, 1975?

Officer Hays: Yes sir, Mr. Sedwick.

Mr. Sedwick: Did Mr. Porter tell you this during both . . .

Mr. Lanning: I'm going to have to object to the question.

The Court: I'm going to sustain the objection, Mr. Sedwick.

Mr. Sedwick: Did Mr. Porter indicate that any police officer had threatened him with a pistol on that date?

Officer Hays: No sir."

Mr. Lanning, who took part in the above cross-examination, was the attorney for co-defendant Deaton. Appellant Porter now claims he was deprived of his right to effectively confront and cross-examine this witness, in that the court sustained the objection to the question posed by him, as set out above.

We can only speculate as to what the question might have been, because it was never completed. In addition, we would have to speculate as to why the court sustained the objection, because no reason was given for the objection and no reason given for the court's ruling. It is true that the scope of cross-examination extends to all phases of the general subject covered in direct examination, not only to those specific points brought out in the direct examination. *Baker v. State*, (1967) 249 Ind. 117, 118, 231 N.E.2d 21, 22; *Hicks v. State*, (1937) 213 Ind. 277, 293–94, 11 N.E.2d 171, 178. *See Brower v. State*, (1956) 236 Ind. 35, 138 N.E.2d 237. However, an examination of the transcript shows that the above testimony represents all of the questions and answers in that area. Appellant did not press the issue any further and attempt to ask any additional questions along these lines. Answers to all the questions he asked on this subject were permitted except one. The record further shows that this witness was thoroughly cross-examined by this appellant with regard to all of the testimony he gave, including the statements referred to above. We cannot say from what appears in the record that the appellant was so prejudiced by the sustaining of an objection to this one question that reversal of his conviction is required.

### VII.

Appellant next complains that the State was permitted, over objection, to put in evidence of plea negotiations between him and the State. Samuel Gwin, the prosecuting attorney at the time these charges were filed, testified that he went to jail on March 25 to talk to appellant Porter at Porter's request. Gwin testified that he asked Porter how he was feeling. Porter replied that he was tense and nervous and his stomach was bothering him. He attributed this condition to the charges he was facing. Gwin then further testified, over Porter's objection, that Porter told him he would be willing to make a statement as to his involvement in this incident, but that he would be willing to cooperate with Gwin only if he could be assured that he would receive only a life sentence. Gwin told him he could

make that commitment to him, and they went on to discuss the facts of this case, during which time Porter gave the statements that have previously been referred to in this opinion.

■ It is the State's contention that this testimony was not admitted for the purpose of showing the guilt of Porter in this case, but was necessary to show the willingness or voluntariness of the statement. The statements referred to were an integral part of the evidence used to show his willingness to give the incriminating statements to the prosecutor and police officer.

It is true that this Court has held, along with our Court of Appeals, that plea negotiations are not admissible to show the guilt of the defendant unless he enters a plea of guilty and does not subsequently withdraw it. *Wright v. State*, (1977) 266 Ind. 327, 363 N.E.2d 1221; *Moulder v. State*, (1972) 154 Ind.App. 248, 289 N.E.2d 522. However, because this testimony was given in conjunction with the statements in which appellant admitted his involvement in this crime, which were also placed into evidence before the jury, it can hardly be said that the statement regarding appellant's sentence and the response of the prosecutor were more prejudicial than the actual admission of involvement in the crime. We therefore find that under the circumstances the court did not abuse its discretion in admitting this evidence, and we find no reversible error.

## VIII.

■ Appellant next argues that the trial court erred in allowing Gwin to testify as to his opinion regarding ultimate facts. Gwin testified that there were two statements given by Porter on March 25, 1975. The first statement was tape recorded and the tape recorder was then turned off. Approximately 45 to 50 minutes later, the tape recorder was turned back on and appellant gave an additional statement. In this second statement he related some facts different from those given in the first statement, and stated that his first statement was not completely accurate and truthful.

On cross-examination by Porter's counsel, Gwin testified as follows:

"Mr. Sedwick: During the period of time on the 25th day of March, 1975, that this tape was turned off, do you recall accusing Mr. Porter that he was lying, Mr. Gwin?

Mr. Gwin: I don't know if I accused him of lying. I think I told him his story was untruthful in my opinion.

Mr. Sedwick: Do you recall telling him something to that effect—that if he didn't change his story there would be no deal concerning life imprisonment?

Mr. Gwin: I didn't tell him if he wouldn't change it, I just expressed that I didn't feel that it was truth—based upon other things that I knew."

On redirect examination, the State asked Gwin upon what he based his comments to Porter that there were discrepancies in Porter's statements. Over appellant's objection, Gwin was allowed to testify that he told Porter that based on facts he knew about the case and his involvement in the investigation, it was his opinion that Porter was not telling the total truth in his first statement.

This testimony was obviously pursued by the State to give the witness an opportunity to explain the actions that were brought out on cross-examination. It was, therefore, discretionary with the court to allow the witness to testify in this manner, even though the testimony involved his own conclusions of fact, rather than the ultimate facts themselves. Admission of opinion testimony on an ultimate fact issue is within the discretion of the trial court. *Bobbit v. State*, (1977) 266 Ind. 164, 171–72, 361 N.E.2d 1193, 1197; *Williams v. State*, (1976) 265 Ind. 190, 195–96, 352 N.E.2d 733, 742. In view of the circumstances here, we cannot say the trial judge abused his discretion and unduly prejudiced the defendant by permitting the testimony. Therefore, there is no error here.

## IX.

The appellant's two allegations of error in regard to the admission of evidence of a

jail break bear a definite relationship to each other in their disposition. Therefore they shall be reviewed together.

During the State's case, Clark County Police Officer Cardwell was called as a witness and asked if something occurred in February, 1976, at the Clark County Jail which would not be considered to be in the ordinary course of the operation of the jail. Mr. Cardwell answered, "We had a jail break." Appellant immediately moved for a mistrial, claiming that this revelation to the jury would put him in grave peril that could not be cured by an admonishment to the jury by the trial judge. The judge admonished the jury at that time to disregard the question and answer. The court did, however, subsequently overrule objections of appellant and permitted this witness to testify that Porter had escaped from his cell by breaking a hole in the wall and crawling through a ceiling area of the jail to a men's restroom and then out of the jail area. This evidence was permitted to go to the jury, and the court included in the final instructions to the jury the issue of flight.

The question whether the court properly refused to withdraw submission to the jury of the initial question and answer of the witness depends initially upon whether the evidence was admissible. Since it is our opinion that the court properly admitted the evidence and instructed the jury, there can be no error on the related issue raised above. We will therefore discuss the admissibility of this evidence in more detail.

Flight of the accused while he is in custody, or avoidance of arrest beforehand, is admissible as evidence of guilty knowledge and upon the issue of the guilt of the accused. *Layton v. State*, (1968) 251 Ind. 205, 210, 240 N.E.2d 489, 492; *Henderson v. State*, (1977) Ind.App., 364 N.E.2d 175, 179. Appellant does not contest the correctness of the instructions themselves, but argues that they were irrelevant and immaterial because the issue of flight should not have been presented to the jury at all. The testimony regarding appellant's escape from jail was relevant to the material issue of his involvement in the crime, as it tended to demonstrate his guilty knowledge of the robbery attempt. It was thus competent evidence against him indicating his participation as an accomplice in the robbery attempt, and was properly the subject of final instructions to the jury.

### X.

We shall treat appellant's arguments regarding the various exhibits together. Appellant claims that State's Exhibits 15 through 34 should not have been admitted as evidence against him. He argues that the State did not lay a proper foundation connecting him with these exhibits. These photographic exhibits are, for the most part, demonstrative evidence of the scene of the crime, and reflect the following:

- #15, 16, 17, 18: the body of Ballard Keeling lying in his store after the incident;
- #19, 20, 21: different views of the area in the store in which the incident took place;
- #22: a bullet in the hallway of the Underwood Supermarket;
- #23: a spent casing on the floor of the store;
- #24: another spent casing on the floor;
- #25: the back door of the Supermarket;
- #26: another view of the rear door with blood spots on it;
- #27: a close-up of a gravel area, showing drops of blood;
- #28: a shoe print;
- #29, 31, 32: a gravel area;
- #30: a gravel area showing tire tracks;
- #33, 34: a Rainbo Bread truck parked at the rear of the Underwood Supermarket.

These exhibits obviously tend to prove that this particular crime was committed, and the place and manner in which it was committed. They therefore constituted relevant and competent evidence to be presented in this cause against both defendants. *Candler v. State*, (1977) 266 Ind. 440, 363 N.E.2d 1233.

Appellant next claims that Exhibits 15 through 18, showing, from different angles, the body of Ballard Keeling with a pool of blood about him, were cumulative and prejudicial, and that permitting them to be shown to the jury tended to inflame the jury. The fact that a photograph might arouse the jury is not sufficient ground in itself to justify its exclusion from the evidence if it is material and relevant. Relevancy of a photograph is to be determined by an inquiry as to whether or not a witness would be permitted to describe the objects or scenes to be photographed. Having in mind the established law in this area and the scenes depicted in these photographs, we cannot say the trial court abused its discretion in permitting them into evidence. *Wilson v. State*, (1978) Ind., 374 N.E.2d 45, 48; *Carroll v. State*, (1975) 263 Ind. 696, 705–06, 338 N.E.2d 264, 271; *Owens v. State*, (1975) 263 Ind. 487, 503–04, 333 N.E.2d 745, 753–54; *Clark v. State*, (1978) Ind.App., 372 N.E.2d 185, 187.

Appellant further argues that Exhibits 29 through 32, which show skid marks and other designs on the pavement and area about the store, are photographs taken in the daylight, and that, as a matter of fact, the lighting conditions were different when those marks were put there. He does not claim the skid marks or any of the other marks or designs were different in any manner from the way in which they are depicted in these exhibits, only that the lighting conditions were not material to what the photographs purported to represent. While lighting conditions at the scene might have changed, the marks represented in the photographs had not, and, therefore, there would be no discrepancy between the photographs and what they purported to represent. It cannot be said that the jury was misled in any way in being allowed to see these exhibits or that the court in any way abused its discretion in admitting them into evidence. *Gill v. State*, (1977) Ind., 368 N.E.2d 1159, 1162; *Hubble v. State*, (1973) 260 Ind. 655, 657–58, 299 N.E.2d 612, 614.

XI.

The appellant next argues that the trial court erred in State's tendered instructions number 11 and 12 over his objection. Instruction number 11 reads as follows:

"I instruct you that the confession of a defendant made under inducement, with all the circumstances, may be given in evidence against him or her, except when made under the influence of fear produced by threats or by intimidation of undue influences; but a confession made under inducement is not sufficient to warrant a conviction without corroborating evidence.

By the term corroborating evidence is meant supplemental or additional evidence tending to strengthen or confirm the confession.

Although this court, after hearing evidence on the issue of voluntariness, has determined that the confession was voluntarily made and admitted it into evidence, you, the jury, must give such weight and credibility, if any, to the confession as you feel it deserves under all of the circumstances in which it was obtained.

The securing of a voluntary confession from guilty persons is to be desired, and the reasonable examination of persons charged with or suspected of crime is and should be allowed in the interest of public welfare and safety."

State's instruction number 12, as modified, is as follows:

"I instruct you that the term 'confession' or 'statement' means any confession of guilt of any criminal offense or any self-incriminating statement made or given orally or in writing by the defendant. Further defined, a confession is a statement made by one who is a defendant in a criminal trial, by which he or she acknowledged certain conduct that constituted a crime for which he or she is on trial.

A self-incriminating statement, further defined, is something less than a confession, in that it does not concede so much pointing towards the defendant's guilt,

and does not alone, even if true, support a deduction of guilt. It is an admission by a defendant whereby he or she expressly or impliedly acknowledges a fact that contributes in some degree to the proof of his or her guilt of an alleged crime."

Appellant complains that these two instructions tend to emphasize his confessions as items of evidence and unduly point them out to the jury, so that the jury might be reminded of their importance and give them greater weight than they otherwise might. He further complains that the last paragraph of instruction number 11 indicates that all people who give statements are guilty.

We must first note that instructions are to be considered with reference to each other and as an entirety, and error in a particular instruction will not justify a reversal unless the error is of such a nature that the whole charge of which it forms a part misleads the jury as to the law of the case. *Ferrier v. State*, (1977) 266 Ind. 117, 120–21, 361 N.E.2d 150, 152; *Tinsley v. State*, (1977) 265 Ind. 642, 646, 358 N.E.2d 743, 745.

In addition to giving instructions 11 and 12, the court instructed the jury that the indictment was not to be considered as evidence against the defendants, nor were the allegations in the indictment to be considered as evidence. Instructions were given on the burden on the State to prove the defendant guilty beyond a reasonable doubt and on the definition of reasonable doubt. The jury also heard instructions on the presumption of innocence of the defendants, the credibility of witnesses, the fact that police officers called as witnesses by the State are to be given no more weight or credence than any other witnesses, the credibility of a witness when attacked by evidence of a criminal conviction, and the cloak of innocence that enshrouds the defendant until there is proof by the State of guilt beyond a reasonable doubt. Further, the jury was instructed that the defendants are not required by their plea of not guilty to prove anything in their own behalf, that the failure of the defendants to testify may not be taken into consideration by the jury in assessing the guilt or innocence of the defendants, that they should consider only the evidence and testimony presented during the trial and no outside influence or interest, that demonstrative evidence such as pictures are only to be used by them in assisting them in determining fact, and not to permit their minds to be inflamed or prejudiced by them, and as to the weight to be given to circumstantial evidence.

We have set out some of the provisions of the instructions to show that this jury was very thoroughly instructed by the court through instructions submitted by all parties. These instructions comprised only a part of the total instruction. In view of this, we cannot say that appellant's confessions were unduly emphasized to the extent that the jury would feel that the court was giving some stamp of approval to the confessions or appraising them at a higher value than other matters of evidence. The definition of voluntariness with respect to confessions, and the admission of confessions into evidence, are the subject of legislation which also establishes certain duties of the trial court. It is therefore a proper subject of jury instruction. *See* Ind.Code (Burns 1975) §§ 35–5–5–1—35–5–5–5. *See also Jones v. State*, (1977) 266 Ind. 349, 352–53, 363 N.E.2d 959, 960.

Appellant claims that the last paragraph of instruction number 11 leads the jury to infer that all people who give voluntary statements are guilty. Such an interpretation takes the instruction out of context. A person who is not guilty would not, of course, ordinarily confess to having committed a crime. The trial court was merely saying that the act of taking, or the endeavor of law enforcement people to take, voluntary statements or confessions from persons is not undesirable or illegal, and in fact can contribute to the public welfare and safety. This instruction very clearly told the jury that it was their duty to determine whether or not the confessions of appellant Porter were given voluntarily and to give such weight to them as they chose. We feel this statement, together with all of

the other instructions, fairly and legally instructed the jury and present no error.

## XII.

■ The trial court refused to give to the jury appellant Porter's instruction number 7, which provided as follows:

"The State of Indiana has introduced in this cause statements purported to be the confessions of the defendant, Eddie Porter. If, at the time the purported confessions were made by the defendant, the defendant was under the influence of fear produced by threats or intimidation or if the defendant was unduly influenced by any cause or if the purported confession was obtained by means of fraud practiced upon the defendant or by means of a combination of two or more of the foregoing and such fear, undue influence, intimidation or fraud, if any was such as to cause defendant to be other than a free agent, then you, the jury, should not consider said purported confession even though you might believe that the matters set out therein are true. On the other hand, these purported confessions are to be considered by you, along with all the other evidence introduced in this cause, if you first find beyond a reasonable doubt that said purported confessions were given as the free and voluntary act of the defendant, Eddie Porter."

The evidence in this case does not show that there was an influence of fear produced by threats or intimidation, or that the confessions were obtained by means of fraud practiced upon the appellant, or there there was a combination of any two of these factors. The appellant himself initiated the discussions he had with the police and prosecutor, and willingly discussed his options in talking to them. Furthermore, the subject matter of this instruction is amply and adequately covered in instructions 11 and 12 considered above and all other instructions given by the court, and we do not, therefore, feel that the court committed reversible error in refusing to give this instruction.

## XIII.

Appellant next argues that the court erred in restricting his cross-examination of one of the State's witnesses. The State called one Violet Porter and questioned her before the jury. Counsel for each defendant then cross-examined her. The State then declined any further re-direct examination of the witness. Appellant Porter requested that he be given the right to further cross-examine Violet Porter. This request was denied by the court. Appellant claims there was additional information brought out by co-defendant Deaton in his cross-examination of this witness, and that this gave the appellant the right to further cross-examine the witness on these new areas. The subject of these matters was the activities of the parties on the night of February 27, and the early morning hours of February 28, 1975, immediately preceding the commission of the crime. It is the State's contention that, following the State's direct examination, appellant Porter was given the opportunity for complete cross-examination and could have covered the area Deaton covered in his cross-examination.

■ The scope of cross-examination is, of course, within the sound discretion of the trial judge, and he will be reversed only upon a showing of a clear abuse of that discretion. *Pulliam v. State*, (1976) 264 Ind. 381, 385–86, 345 N.E.2d 229, 235; *Franks v. State*, (1975) 262 Ind. 649, 658, 323 N.E.2d 221, 226; *Taylor v. State*, (1976) Ind.App., 358 N.E.2d 167, 169. Here, even though the State did not conduct re-direct examination of the witness, the court could have allowed the appellant further cross-examination if it appeared there was information brought out by co-defendant Deaton which made further examination of the witness pertinent and material to Porter's defense. However, Porter did not show the trial court, and has not shown to us in the record, how his inability to further cross-examine the witness following Deaton's cross-examination prejudiced him; it does not appear for what purpose the line of questioning was needed nor what the effect of such

questioning might be. Thus, we cannot say, based on the record presented to us, that the trial court abused its discretion.

## XIV.

Prior to the impanelling of the jury for this trial, defendant Porter challenged all forty of the prospective jurors on the ground that the process utilized in selecting them was improper. Appellant argues that when the jurors were actually called for duty by the court bailiff, some of the names were skipped over when they could not be contacted by phone and certain others were excused if it appeared they had some reason for not being able to serve at the time of appellant's trial. However, there is no showing here of a systematic exclusion of any juror or any group of jurors, or of an arbitrary method of selection or calling of jurors. Where there has been substantial compliance with the statutes directing the selection and calling of jurors, minor irregularities will not constitute reversible error unless there is substantial prejudice to the defendant's rights as a result of such irregularities. *Shack v. State*, (1972) 259 Ind. 450, 457, 288 N.E.2d 155, 161; *Harrison v. State*, (1952) 231 Ind. 147, 165, 106 N.E.2d 912, 921; *Rudd v. State*, (1952) 231 Ind. 105, 111, 107 N.E.2d 168, 170–71. There is no showing here that appellant was in any way prejudiced by any irregularity in the method of composing or calling the jury.

## XV.

Appellant next argues that the trial court erred in refusing to remove two of the jurors whom appellant challenged for cause during the voir dire examination. One Mrs. Moore testified that she had a business at the State Park in the county and that it would be difficult for her to sit on the jury. When examined on voir dire, she indicated that if the trial lasted ten to fifteen days, she would be very concerned about her business. She did state, however, during the examination that she would be able to set these concerns aside, that she would not hold the length of the trial against either of

the defendants in any way, and that she would be able to be a fair and impartial juror.

One Mr. Melton testified that at one time in 1969 and 1970 he was a deputy sheriff with the Brown County Sheriff's Department. At the time of the trial he testified that he was a special volunteer reserve deputy with the sheriff's office. However, Mr. Melton also testified that he would be able to listen to all of the evidence and to fairly decide the issues without any predetermination or prejudice.

After the appellant had exhausted his peremptory challenges, he moved the court to grant him additional peremptory challenges. This request was refused by the court. In order to find that the trial court committed reversible error on this issue, we would have to find that the court demonstrated an abuse of discretion in overruling the challenge for cause in both these instances. *Stevens v. State*, (1976) 265 Ind. 396, 402, 354 N.E.2d 727, 732. A great many of the citizens who serve on our juries, and give of their personal time in doing so, would doubtless rather be doing something else. We ask them to set aside their other concerns and concentrate their efforts on the case before them. The trial judge in his discretion must determine that each juror can fairly and actually set aside the concerns he has in his regular daily endeavors and give his time to the trial. In this case, the trial judge determined that Mrs. Moore could do so, and we see no reason to gainsay or second-guess him.

Appellant cites *Gaff v. State*, (1900) 155 Ind. 277, 58 N.E.2d 74, as support for the proposition that Mr. Melton should have been excused for cause. The *Gaff* case determined that the make-up of a criminal case jury was improper where two deputy sheriffs were included on the jury. However, in that case the sheriff and his deputies at that time had a pecuniary interest in the conviction of accused persons since the county paid the sheriff's salary only out of fees earned and collected. The only way costs could be collected to pay such fees was

in securing convictions in criminal cases. That is no longer true and is not true of this juror. The *Gaff* case was distinguished on this basis in *Ross v. State*, (1977) Ind.App., 360 N.E.2d 1015, where one of the jurors became a deputy sheriff after the trial began and one was the wife of the president of the Sheriff's Merit Board. Here, juror Melton had been a deputy sheriff for two years at a time five years prior to trial. The special deputy card he carried was that of a volunteer, for which there was no remuneration. There was no evidence presented to show that this juror had any interest or any feeling one way or the other about this case. We again, cannot say that the court abused its discretion, after observing the interrogation of this juror, in overruling the challenge for cause directed to him. We do not find reversible error on this issue.

### XVI.

Appellant claims the evidence presented against him was insufficient. In addition to the evidence set out above, there was testimony that Porter and Deaton spent the night together; that they discussed a plan to get "a couple hundred dollars," but they would have to wait until 7:00 a. m.; that two men were seen at the scene of the robbery in the automobile in question; and that Porter was aware of facts of the crime prior to the time these facts were made public. In addition, appellant Porter admitted to witness Larry Scully that he and Deaton had killed Keeling in an attempted robbery. All of this evidence and testimony constituted sufficient evidence from which the jury could have found appellant Porter guilty on all counts.

### XVII.

Appellant's final contention concerns the sentences imposed upon his convictions. He argues that it was error to impose the thirty-year sentence for armed robbery in addition to the life sentences. We agree.

This Court has consistently held that armed robbery is a lesser-included offense of inflicting physical injury while in the commission of a robbery. As appellant has already been sentenced on the greater offense, it would violate his right against double jeopardy to impose an additional sentence for the lesser offense. *Bobbit v. State*, (1977) 266 Ind. 164, 168, 361 N.E.2d 1193, 1196; *Swininger v. State*, (1976) 265 Ind. 136, 143, 352 N.E.2d 473, 478–79. *Compare Elmore v. State*, (1978) Ind., 382 N.E.2d 893. Accordingly, the sentence for armed robbery must be vacated.

This cause is remanded to the trial court with instructions to vacate the thirty-year sentence under Count III. The judgment of the trial court is affirmed in all other respects.

All Justices concur.