**George RILEY, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 1083S369.

Supreme Court of Indiana.

Feb. 27, 1986.

William F. Thoms, Jr., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., and Lisa M. Paunika, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Appellant George Riley was convicted after trial by jury of delivery of more than 3 grams of cocaine, a class A felony, Ind. Code § 35-48-4-1, and was sentenced to a term of imprisonment of 26 years. Because we reverse the conviction and remand, we address only one issue raised in this direct appeal: whether Riley was denied a fair trial when the State elicited testimony about his prior drug use and sales in violation of an order *in limine.*

Riley was convicted solely on the testimony of Lennis Utley, who had been arrested after selling cocaine to undercover agents. In exchange for favorable treatment, Utley agreed to testify that he had purchased the cocaine from appellant.

The trial court granted appellant's motion *in limine,* ordering the State to refrain from mentioning prior drug use or sale by Riley. Nonetheless, the prosecutor examined Utley as follows:

Q. Why did you go to that particular location that night when you were going to get some cocaine for (the undercover agent)?

A. Because I'd been there before and I'd gotten cocaine.

The trial court sustained a defense objection that the State was attempting to establish prior acts of misconduct.

Q. Now, how long have you known Mr. Riley?

A. Approximately a year or year and a half.

Q. And what's the nature of your relationship with him?

A. Friends.

Q. And do you have any other relationship with him?

A. No.

Q. Is this the first time you've ever handled any cocaine?

A. No, sir.

\* \* \* \* \* \*

Q. Now, this cocaine that you ... you say you did it before about ten times?

A. Yes.

Q. Where'd you buy it the prior times that you got it?

Here, outside the presence of the jury, the trial court granted defense counsel's motion to order the prosecutor to refrain from mentioning any potential acts of misconduct unless such testimony was brought within legal exceptions to the prohibition such as common scheme or plan. The State has not argued on appeal that the prosecutor's questions and the evidence which they intended to elicit met the common scheme or plan exception.

Q. Now, how many times have you bought cocaine ... you say you've used it about ten times, how many times ...?

A. Approximately ten or fifteen times.

\* \* \* \* \* \*

Q. Now, did you buy from the same source all the time?

A. Yes.

Q. And where was that place?

Again, defense counsel objected and the jury was taken from the courtroom. The prosecutor argued that previous testimony

to the effect that Utley paid the same price for cocaine at each transaction established a common scheme and, therefore, made admissible the evidence of appellant's prior sales. The trial court sustained the objection, informing the State that the proper foundation had not been laid for introduction of the evidence it was attempting to elicit.

Q. Now, you say you knew George Riley for a couple years?

A. A year, year and a half.

\* \* \* \* \* \*

Q. About how often would you see him?

A. What do you mean by that?

Q. Well, have some contact with him, whatever, visit with him or whatever?

A. I saw him several times from then on.

Q. Several times?

A. Yes.

Q. And what would be the occasion for you those several times you met him later?

A. Just ...

Counsel's objection here was overruled because the trial judge felt the State was entitled to show the witness' relationship to Riley.

Q. And what would be the occasion for you those several times you met him later?

A. Just friendship and stuff.

Q. Well, "stuff", what stuff? I mean, how close were you?

A. Pretty close.

Q. Did you trust one another?

A. Yes, sir.

Q. And was it merely just to visit every time you went to see him?

A. Just general friends, to say hi.

Q. Did you ever have any other reason to see him?

Counsel's objection was sustained and direct examination ended. On redirect, the prosecutor asked:

Q. I believe you testified in response to the cross-examination of Mr. Hicks that you were using cocaine and had used cocaine?

A. Yes, Sir.

Q. Quite a few times. Where did you get that cocaine you used?

Counsel objected that the State was repeatedly attempting to establish acts of misconduct without having laid the proper foundation. Again, the trial judge sustained the objection.

Q. Now, I believe there was also a question Mr. Hicks asked you ... you mentioned something about you were to pay your source?

A. I don't understand the question, sir.

Q. You were talking about you were going to pay your source and somebody was supposed to call and maybe help you out.

A. No, sir, I don't ... I don't understand that at all.

Q. Who was your source?

A. Where I got the cocaine?

Q. Yes.

A. George.

Q. And that's who your source would have been that you would pay?

A. Uh-huh.

Q. Now, you refer to him as your source, your source to cocaine, right?

A. Uh-huh.

Q. Now, then, I believe you were asked if you had done any dope with this Cole fellow.

A. Yes.

Q. Who else have you done any dope with, let's say in the last year or year and a half?

A. Steve Lanman and a few of his friends from Evansville.

Q. Who else?

At this point counsel moved for mistrial, stating the prosecutor was repeatedly attempting to "sneak into evidence" prior acts of misconduct. His motion was denied.

Q. Who else?

A. (Lanman's) friends that were down at that party that one night, Allen somebody and another friend of his.

Q. And who else?

A. I can't think of his name. He got in trouble, too.

Q. Now, how about your source?

Q. Did you do any dope with your source? Who was your source, again?

A. George.

Q. And how about him?

A. Yes.

Q. You have done some dope with him?

A. Yes.

The conclusion is inescapable that Riley was greatly prejudiced by the prosecutor's attempts to blacken his character in support of its case against him. The motion *in limine* was granted for the purpose of limiting the State's evidence to the confines of the legal proposition that evidence of criminal activities apart from the crime charged is inadmissible on the question of guilt. *Brown v. State* (1984), Ind., 459 N.E.2d 376.

Despite the preliminary order and the trial court's repeated rulings in favor of the defense, the prosecution persisted in its attack by harpoon. The trial judge suggested to the State that he might be inclined to grant relief from the order *in limine* given the proper foundational showing of distinguishing similarities linking the crime charged and the previous activities. *See, Biggerstaff v. State* (1977), 266 Ind. 148, 361 N.E.2d 895. Witness Utley did testify that on each occasion that he purchased cocaine it was a white powdery substance affecting him similarly and costing eleven hundred dollars for a one-half ounce package. These similarities between the drug transaction leading to Riley's arrest and the alleged previous transactions are not sufficiently distinguishing to constitute a common scheme even if the prosecutor had undertaken it upon himself to seek relief from the order, which he did not. In any event, prior to making this attempt to provide a foundation, the prosecutor had already done considerable damage by asking Utley why he had gone to Riley for cocaine and where he had previously purchased his drugs. Furthermore, the prosecutor's obvious goal, in which he succeeded, was not just to reveal similar drug *transactions* but also to inform the jury of Riley's alleged drug *use.* "Evidence of prior use is no more relevant in establishing a common scheme or plan to deal in narcotics than is evidence of public intoxication in proving a common plan or scheme to illegally sell alcohol." *Gaston v. State* (1983), Ind.App., 451 N.E.2d 360. This case differs greatly from *English v. State* (1985), Ind., 485 N.E.2d 93, in which this Court vacated the opinion of the Court of Appeals and held that English was not denied a fair trial when a State's witness referred to a prior offense committed by English. In *English,* Justice Pivarnik reasoned that reversible error had not occurred because, 1) the challenged testimony was not intentionally elicited by the State, 2) the jury was admonished to disregard the testimony, and, 3) English's conviction was supported by substantial evidence independent of that which should not have been admitted. By contrast, the only evidence against Riley was Utley's testimony which was unfairly bolstered by the State's deliberate and unrelenting harpooning.

The trial judge here was faithful to his own order *in limine* and to the principles outlined in *Brown v. State, supra,* as he repeatedly sustained defense objections to the prosecutor's violations of the order. Still, as Justice Prentice wrote for a unanimous Court:

Although not entitled to a perfect trial, the defendant is entitled to a fair trial; and where counsel has deliberately violated rights of the defendant and there is reasonable grounds to believe that such violation may have prejudiced his cause, a mistrial should be declared, if moved by the injured party.

*White v. State* (1971), 257 Ind. 64, 77, 272 N.E.2d 312, 319.

For these reasons the judgment of the trial court is reversed and the cause is remanded for a new trial in accordance with this opinion.

GIVAN, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.