Christopher S. GAMBLE,
Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 35A02–9111–CR–506.

Court of Appeals of Indiana,
Second District.

May 4, 1992.

John W. Bailey, Matheny, Michael, Hahn & Bailey, Huntington, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Mary Dreyer, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

BUCHANAN, Judge.

## CASE SUMMARY

Appellant-defendant Christopher S. Gamble (Gamble) appeals his convictions for disorderly conduct,[1] a class B misdemeanor, resisting law enforcement,[2] a class A misdemeanor, and public intoxication,[3] a class B misdemeanor, claiming that the evidence was insufficient to support the convictions, and that the conviction should be reversed because one of the witnesses tes-

---

1. Ind.Code 35–45–1–3(2) (1988).

2. Ind.Code 35–44–3–3(a) (1988).

3. Ind.Code 7.1–5–1–3 (1988).

tified in violation of a separation order entered by the trial court.

We affirm.

## FACTS

The facts most favorable to the judgment reveal that Gamble asked Stacey Roberts (Roberts) to drive him to the abode of Corey Gibson (Gibson) at the Parkview Apartments in Huntington, Indiana, in order that he might settle an argument with Gibson.

When they arrived at the complex, Gamble waited in the truck, and Roberts walked up to Gibson's apartment. Roberts told Robert Wall (Wall), who answered the door, that Gibson should come outside and talk to Gamble. Gibson refused to leave the apartment and indicated he saw a rifle in the truck next to Gamble.

Gibson called the police and they arrived at the scene moments later. They saw the rifle next to Gamble in the front seat of the vehicle. He refused to cooperate with the police and he smelled strongly of alcohol and his speech was slurred. Gamble shouted obscenities at the officers and continued yelling after he was ordered to quiet down. Gamble struggled with the police, and it took four officers to restrain Gamble so he could be handcuffed. The officers carried Gamble to the police cruiser and placed him in the back seat. Gamble continued shouting obscenities on the way to the jail. When Gamble was placed in the drunk tank, he pounded on the glass walls and kicked the metal door several times.

Following a jury trial on April 27, Gamble was convicted of all charges.

## ISSUES

1. Whether the evidence was sufficient to support the convictions?

2. Whether the trial judge abused his discretion in permitting a police officer to testify when it was shown that he violated an order separating the witnesses?

## DECISION

*ISSUE ONE* —Was the evidence sufficient to support the convictions?

*PARTIES' CONTENTIONS* —Gamble argues that the State failed to present sufficient evidence establishing that he was guilty of the charged crimes beyond a reasonable doubt. The State responds that the evidence was sufficient.

*CONCLUSION*—The evidence was sufficient to prove that Gamble was guilty of the offenses charged.

■ At trial, several police officers testified that there was a strong odor of alcohol about him and his speech was slurred. *Record* at 337, 405, 502, 667, 704. Gamble became loud and boisterous and fought with the police when they arrived. This was sufficient evidence to show that Gamble was intoxicated. *See e.g. Porter v. State* (1979), 271 Ind. 180, 391 N.E.2d 801 (conviction for public intoxication affirmed when the evidence demonstrated that defendant smelled of alcohol, had slurred speech, and displayed a hostile attitude toward police officers); *see also Hampton v. State* (1984), Ind.App., 468 N.E.2d 1077.

■ Gamble takes the position that his conviction for public intoxication may not stand because the State failed to show that Gamble was in a "public place" at the time of his arrest. Proof that Gamble was in a public area is an essential element of the State's case. *See Miles v. State* (1966), 247 Ind. 423, 216 N.E.2d 847; *see also Haynes v. State* (1990), Ind.App., 563 N.E.2d 159 (Buchanan, J. dissenting on other grounds); IC 7.1–5–1–3.

Although the truck was located in a privately owned parking lot when the officers approached it, the State is not precluded from prosecuting Gamble for public intoxication. In *State v. Sevier* (1889), 117 Ind. 338, 20 N.E. 245, our supreme court made the following statement:

"The purpose of the law is to protect the public from the annoyances and deleterious effects which may and do occur because of the presence of persons who are in an intoxicated condition."

*Id.* at 340, 20 N.E. at 246–47. In *Heichelbech v. State* (1972), 258 Ind. 334, 281 N.E.2d 102, the defendant's conviction for

public intoxication was upheld when the evidence revealed that he was arrested in a service station parking lot. In writing for the majority, Justice Prentice artfully concluded that a place of "public resort" may be a "public place:"

"[Heichelbech's] argument that he was not in a public place is without merit. He was, at that instant, at an automobile service station, a business establishment open to the public. *Although private property, this was, nevertheless, either a 'public place or a place of public resort' within the meaning of the statute proscribing the offense.* [Citations omitted]. A gasoline service station was held to be a public place within the ambit of a similar statute in *State v. Fenner* (1965), 263 N.C. 694, 140 S.E.2d 349. Moments earlier, the defendant was seen in his automobile within a public highway. We cannot assume that his condition had changed in the interim. A truck parked on the side of the highway was held to be a public place under the same statute in *Miles v. State* (1966), 247 Ind. 423, 216 N.E.2d 847."

*Heichelbech* at 340–41, 281 N.E.2d at 105–06 (emphasis supplied).

At trial, the evidence revealed that the officers approached the truck which was parked in the apartment complex parking lot. Gamble was a passenger and a rifle was beside him. *Record* at 176, 384. Roberts testified that Gamble consumed two beers before arriving at Gibson's apartment, *Record* at 748, and Gibson saw Gamble drinking in the truck parked outside the apartment. *Record* at 175.

Although the truck had not entered the public highway when the officers approached, the apartment complex roadway was obviously accessible to the general public enabling them to travel to and from the various units in the complex. The evidence also demonstrated that Gamble was in an intoxicated condition before leaving the apartment complex inasmuch as he and Roberts drank beer prior to their departure for Gibson's. *See Heichelbech, supra.* The jury could reasonably conclude that Gamble was guilty of public intoxication beyond a reasonable doubt.

 Gamble seeks refuge in the First Amendment to the U.S. Constitution as to the disorderly conduct charge.

The State charged Gamble as follows:
"On or about the *26* day of *October, 1990,* in Huntington County, in the State of Indiana, said defendant did recklessly or knowingly make unreasonable noise, to-wit: *cussing and shouting in public* and continued to make said noise after being asked to stop by *Cletus W. Olinger....*"

*Record* at 24. IC 35–45–1–3 provides in relevant part that: "A person who ... (2) makes unreasonable noise and continues to do so after being asked to stop ... commits disorderly conduct...."

At trial, police officer Cletus Olinger (Olinger) testified that Gamble was screaming "at the top of his lungs." *Record* at 686. Olinger and the other officers told Gamble to quiet down, and he refused to do so. *Record* at 397, 421, 438. Officer Tom Hughes (Hughes) testified that Gamble was screaming "f___k you guys and you know you can't do this to me." *Record* at 438, 444. He also screamed that he was going to "kill that f_____g pig" when he got out of jail. *Record* at 446.

In *Brittain v. State* (1990), Ind.App., 565 N.E.2d 757, this court upheld a conviction for disorderly conduct when the evidence reflected that the intoxicated defendant became belligerent and screamed at a police officer several times calling him a "f_____r" and a son-of-a-bitch. As in *Brittain,* we consider Gamble's language to constitute fighting words undeserving of constitutional protection. *See also Robinson v. State* (1992), Ind.App., 588 N.E.2d 533; *Mesarosh v. State* (1984), Ind.App., 459 N.E.2d 426; *Stults v. State* (1975), 166 Ind.App. 461, 336 N.E.2d 669. The evidence also demonstrates that Gamble continued to yell and shout at the police officers after they told him to be quiet. Under these circumstances, the evidence was sufficient to support the conviction for disorderly conduct. *See Brittain, supra* (defendant's continued verbal assault on police

officers despite repeated orders to calm down was sufficient to support disorderly conduct conviction).

■ The evidence was also sufficient to support Gamble's conviction for resisting law enforcement.

IC 35–44–3–3(a) provides that:

"A person who knowingly or intentionally: (1) forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of his duties as an officer; commits resisting law enforcement, a Class A misdemeanor...."

At the trial, it was demonstrated that Gamble refused to permit the police to handcuff him, and it took four officers to restrain him. Gamble continued to struggle with the police when he arrived at the jail. *Record* at 178–86, 257–65, 317–39, 379–99, 429–54, 497–553, 641–96. This was more than sufficient to show that Gamble was guilty of resisting law enforcement officials. *See e.g. Bernard v. State* (1989), Ind., 540 N.E.2d 23 (conviction for resisting law enforcement upheld when defendant kicked the interior of a police cruiser, then turned to kick a uniformed officer).

*ISSUE TWO*—Did the trial court abuse its discretion in permitting a police officer to testify when it was shown that he violated an order separating the witnesses?

*PARTIES' CONTENTIONS*—Gamble claims that the trial court erred when it denied Gamble's motion to exclude Olinger's testimony when it was shown that he violated the trial court's separation of witnesses order. The State replies that the trial judge properly exercised his discretion in permitting Olinger's testimony because there was no evidence of procurement or connivance on the part of the State.

*CONCLUSION*—The trial judge did not commit reversible error in denying Gamble's motion to exclude Olinger's testimony.

■ Officer Tom Emley (Emley) mistakenly testified that he had transported Gamble to jail and that Gamble had calmed down during the ride. After the noon recess, Emley revealed that he had read the police reports during lunch and discovered that it was Olinger who drove Gamble to the jail. *Record* at 624. Emley acknowledged that he discussed this discrepancy with Olinger during the noon break. *Record* at 624–25. The trial judge inquired about the conversation that took place between Olinger and Emley and determined that nothing was discussed but Emley's mistaken belief that he transported Gamble to jail. *Record* at 628. The trial judge then denied Gamble's motion to exclude Olinger's testimony and permitted Olinger to state that *he* had driven Gamble to the jail which represented the true fact. *Record* at 628.

While Olinger's conversation with Emley violated the court's separation of witness order because the judge admonished him not to discuss his testimony with any other witness, *record* at 626, a trial court has the discretion to permit a witness to testify notwithstanding a violation of such an order, unless the defendant can show connivance or procurement on behalf of the State. *Morgan v. State* (1989), Ind., 544 N.E.2d 143; *Halbig v. State* (1988), Ind., 525 N.E.2d 288; *Roop v. State* (1991), Ind. App., 571 N.E.2d 568, *trans. denied.*

While the change in Emley's testimony *might* have lent some credibility to Olinger's recitation of the events regarding Gamble's conduct, there was evidence independent of this testimony establishing that Gamble committed the charged offenses. As discussed in issue 1, *supra,* Hughes testified that Gamble resisted arrest by struggling and kicking Emley and Simms as they attempted to restrain him. *Record* at 437–38. Hughes also testified that Gamble "was yelling, screaming, [and] cussing, quite loud enough for everyone in the vicinity to hear him, [and that he was yelling] f__k you guys" at the police officers. *Record* at 438.

The introduction of inadmissible evidence which is merely cumulative and not decisive of guilt is not prejudicial error. *Hendricks v. State* (1990), Ind., 562 N.E.2d 725; *Coomer v. State* (1991), Ind.App., 575 N.E.2d 683. Reversal should not be predicated on the erroneous admission of evi-

dence when evidence of the same probative value is properly admitted. *See Wallace v. State* (1985), Ind., 486 N.E.2d 445, *cert. denied* (1986), 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 723; *Hatton v. State* (1986), Ind.App., 498 N.E.2d 398.

While it may have been error to permit Olinger to testify in violation of the witness separation order, the record reflects that the other properly admitted evidence was sufficient to prove that Gamble committed the charged offenses. Olinger's improperly admitted testimony was merely cumulative of other evidence already before the jury, so reversal is not warranted. *See Hendricks, supra; Wallace, supra.* A defendant is not entitled to a perfect trial, only a fair one. *See Riley v. State* (1986), Ind., 489 N.E.2d 58; *Pineiro v. State* (1982), Ind.App., 434 N.E.2d 135, *trans. denied.*

Judgment affirmed.

HOFFMAN, J., concurs.

SHIELDS, J., concurs as to all issues except the sufficiency of the evidence to sustain the disorderly conduct conviction; on that issue she concurs in result.