THE STATE *v.* TINCHER.

[No. 2,838.  Filed November 15, 1898.]

CRIMINAL LAW.—*Public Intoxication.*—*Public Place.*—Evidence that defendant was intoxicated at a dance held at a private residence, attended by seventy-five or one hundred persons will not support the criminal charge of public intoxication.

From the Sullivan Circuit Court.  *Affirmed.*

*W. A. Ketcham*, Attorney-General, *Merrill Moores* and *Charles D. Hunt*, for State.

*W. S. Maple*, for appellee.

WILEY, J.—This case is before us on a reserved question of law.  The appellee was indicted for having been found in a state of intoxication in a public place, and on a plea of not guilty, the cause was submitted to a jury for trial, and under an instruction of the court a verdict of acquittal was returned.  The public place at which the appellee was charged to have been found in a state of intoxication was, in the language of the indictment, "at a public assemblage at the residence of James Williams," in Sullivan county, Indiana.

The facts disclosed by the record are as follows: There was an ice cream supper and a dance at the private residence of one James Williams, and from seventy-five to one hundred persons were in attendance,  The record does not disclose whether the

general public were invited, or whether those in attendance were there by special invitation. The two witnesses who testified in the case stated that they were not invited specially to the supper, but went because they had heard there was to be such a supper. They did not know whether other persons were specially invited or not. The record shows that there was an ice cream stand out in the yard, near a public highway, where ice cream and other refreshments were sold. The State offered to prove by two witnesses that the appellee attended the supper, and while there was in a state of intoxication. The court excluded all evidence offered by the State to prove the intoxication of the appellee; such evidence being excluded, as shown by the record, on the ground that the "defendant was not in a public place when at said supper and dance." Following the exclusion of this offered evidence, the record recites that "the prosecuting attorney thereupon stated to the court that all the evidence the State had and proposed to introduce in this case relative to the defendant's being in a state of intoxication, tended to show the defendant's condition at Williams' at the supper and dance, and that the State had no evidence of his intoxication at any other place. Whereupon the court excluded the evidence showing the defendant's intoxicated condition at the supper and dance, and announced and ruled that said supper and dance did not constitute a public place." To this ruling the State excepted, and has properly presented the question by a bill of exceptions. We have therefore for our decision this question: Did the private residence of James Williams, which was in the country, and at which a number of persons had gathered to attend an ice cream supper and dance, constitute a public

place within the meaning of section 2091, Horner's R. S. 1897?

The appellee has not favored us with a brief. "The term 'public place' is a relative one. What is a 'public place' for one purpose is not for another.  *  *  * A place which is public in one community is not necessarily so in another." 19 Am. & Eng. Ency. of Law, p. 563. In *Cahoon* v. *Coe*, 57 N. H. 572, it was said: "The term *public place*, as used in the statute, is relative. What might be a public place in a crowded and populous city, and what would be a public place in a small town, sparsely inhabited, are entirely different questions." In *Parker* v. *State*, 26 Tex. 204, it was said: "'A public place' does not mean a place devoted solely to the uses of the public; but it means a place which is, in point of fact, public, as distinguished from private—a place that is visited by many persons, and usually accessible to the neighboring public." In Alabama there is a statute prohibiting cock-fighting in a public place, and providing a punishment for its violation. In *Finnem* v. *State*, 115 Ala. 106, 22 South. 593, appellant was indicted for violation of such statute. It was shown that the cock-fight took place in an old field grown up with bushes, etc., about one-fourth or one-half mile from the public road. The appellant requested the court to give the following instructions: (1) "I charge you that a place in the thick woods, one-half mile from any public highway, or other public place, is not a public place, unless made so by meeting at such place more than one time. (2) I charge you that it is no violation of law for seventy-five or one hundred men to meet in the thick woods, one-half mile from any public highway or other public place, for the purpose of fighting cocks." These instructions were refused, and the su-

preme court held that such refusal was correct, saying: "The charges requested by the defendant proceeded on the idea that the evidence did not show a public place, and were therefore well refused. But aside from this consideration, it cannot be said as matter of law that a place where seventy-five to one hundred men met for the purpose of fighting cocks is not a public place even though it be 'in the thick woods one-half mile from any public highway or other public place,' which is the proposition embraced in these charges. The place, however secluded in and of itself, is made public by the assemblage there of people in such numbers, and the right of the public generally to assemble there on the occasion for the purpose of engaging in or witnessing cock-fighting; and it is wholly immaterial whether there has ever been any assemblage of people at that place for any purpose." To say that "in the thick of the woods one-half mile from any public highway" in a secluded and unfrequented spot, where a number of persons congregate upon one occasion only to witness cock-fighting is a public place, within the meaning of a criminal statute, it seems to us is a strained construction of the term, and one which does not meet with our approval. The construction put upon the term "public place" in the case last cited, as it is used in a criminal statute, is not, in our judgment, in harmony with the great weight of authorities. There is a wide distinction between the terms "public place" and "public assemblage" or gathering.

The people who congregated at the residence of James Williams as described in the indictment in the case before us, might have constituted a public assemblage, but as to whether they did or did not, we do not decide; but we are clear that such assemblage

of persons did not make his private residence a "public place" within the meaning of the statute.

A private residence is not a public place in any sense of the term, and the mere suggestion of the fact is a sufficient argument to support it. We are unable to see how a private residence can be made a public place by a number of persons in the neighborhood gathering there, with or without invitation, to pass an evening in social intercourse and innocent amusement.

Whether a place is public or not cannot be determined by the number of people who may gather there for some legitimate purpose, but by the place itself. Nor can it be determined by people freely and voluntarily congregating at their own pleasure, or by the invitation of others. If this were true, then the most isolated place in an uninhabited region would become a public place if a number of people should assemble there. Or if a number of persons should congregate and go in a body to the home of one of their neighbors to surprise him and celebrate with him some birthday or marriage anniversary such fact would transform the privacy of his home into a public place. We cannot give the statute, upon which this prosecution rests such a construction.

As we have remarked, a private residence is not a "public place," within the meaning of the statute, and it is not made a public place by the assemblage of a number of persons.

In the case of the *State* v. *Sowers*, 52 Ind. 311, this exact question was decided. There appellee was indicted for having been found in a state of intoxication in a public place, to wit, "At a social party held and had at the residence of Jackson Simmons." The court said: "The private house of a gentleman, at which he gives or holds a social party, cannot, with-

in the meaning of the statute, or in any sense of society or government, be understood to be a public place. A public place is where all persons have a right to go." The court did not err in excluding the offered evidence, or instructing the jury to return a verdict for appellee. Judgment affirmed.