ROMAN HEICHELBECH *v.* STATE OF INDIANA.

[No. 470S74. Filed April 14, 1972.]

*Arthur C. Nordhoff, Jr.*, of Jasper, for appellant.

*Theodore L. Sendak*, Attorney General, *Robert A. Zaban*, Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was convicted in a trial by jury of committing bodily injury upon a police officer while resisting arrest. (Acts of 1929, ch. 101, § 1; 1963, ch. 177, § 1; 1969 Supp. Burns. Ind. Stat. Ann. § 10-1005). He

was sentenced to imprisonment for not less than one nor more than five years.

This appeal is predicated upon three alleged errors:

(1) Refusal to give Defendant's tendered instruction number 2.

(2) Overruling of Defendant's motion to strike entire testimony of the prosecuting witness, who was the assaulted police officer.

(3) Overruling the Defendant's motion for a directed verdict.

The evidence, viewed most favorably to the State, discloses that on the date of the offense, the officer was driving south on routine patrol in or near the city of Jasper. He had received a report from his command post that the defendant was intoxicated and driving a motor vehicle north on the same road. Upon meeting the defendant, the officer turned his vehicle around and followed him. There were two other vehicles between the defendant and the officer and several other persons in the defendant's vehicle, but the officer saw that the defendant was the operator. Defendant turned left into an automobile service station, and the officer followed but was delayed briefly by reason of on-coming traffic. When the officer arrived at the service station and parked his patrol car, the defendant's vehicle was stopped at a fuel pump and the defendant was standing nearby. The officer approached and asked the defendant for his driver's license, which he produced. There was a strong odor of alcohol upon his breath. Defendant then asked his mother, who was a passenger in his automobile, to get out. The officer then had the defendant perform two simple physical feats, being tests to indicate sobriety or intoxication by displaying the degree of coordination possessed by the performer. Defendant made no objection to the taking of such tests, but his performance indicated that he was intoxicated; whereupon the officer took out his handcuffs, and told him he was under arrest. Seeing the handcuffs, the defendant said "You're not putting those on me." At this

point, the defendant's mother requested the officer to merely give him a ticket. The officer declined and ordered the defendant to get into the patrol car, which he did, without being handcuffed. As the officer started to drive away, the defendant asked where they were going, and the officer replied that they were going either to the state police post for a breathalizer test or directly to jail. Defendant said that he would not accommodate the officer and that he would have to use force. Defendant then got out of the patrol car and went inside the service station office, and the officer followed. Defendant's mother was in the office, and when the officer attempted to take hold of the defendant, he used his mother as a shield, placing her between himself and the officer and pushing her in whichever direction the officer reached. Ultimately, the officer, with his nightstick in his right hand, got hold of Defendant with his left hand, and the defendant grabbed the end of the nightstick. Up to this point, both prior to and during the scuffle, the officer warned the defendant several times of the consequences of his resisting arrest, and the defendant replied each time that if he wanted to arrest him he would have to use force. The officer kicked the defendant in an effort to compel him to let loose of the nightstick; and the defendant grabbed the officer around the legs and shoved him backwards. During the struggle, the plaintiff was struck several severe blows on his head with the nightstick, and the parties fell through a glass door, and the officer was cut. Both received serious injuries. With the defendant only semi-conscious, the officer still was unable to get handcuffs on him because of interference from the defendant's mother. Ultimately he radioed for help and completed the arrest only with the assistance of another officer.

(1) Defendant's tendered instruction number 2 was as follows:

"If you find from the evidence that Joseph Rhoades bore malice toward Roman Heichelbech, at the time of the al-

leged attempt to arrest, and that said Roman Heichelbech only tried to quiet said Joseph Rhoades, and further that the said Joseph Rhoades became violently angry and kicked defendant and struck defendant in and on defendant's head with a blunt instrument to such an extent as to fall on his face and need hospital or doctor's immediate aid, you may take such act of said Joseph Rhoades into consideration in determining whether said Joseph Rhoades bore malice toward Roman Heichelbech, if you find that said Joseph Rhoades attacked Roman Heichelbech without probable cause and with great violence."

Being unable to understand this instruction, we assume that the trial judge encountered the same difficulty. The giving of such a garbled and unintelligible instruction could not be of assistance to the jury in its proper deliberation and was very likely to confuse them. *A tendered instruction which the court itself cannot understand and properly relate to the law and the evidence of the case ought not to be given.*

Additionally, if we were to speculate upon the meaning of the tendered instruction and conclude that it was an attempt to advise the jury that if it found that the officer had malice towards the defendant, it could take that fact into account, we would, nevertheless, hold that it was properly refused. The defendant was entitled to resist the arrest, *only if the officer had no right to arrest.* Am. Jur. 2d, *Criminal Law* § 94; and recent cases have held that even then he may, nevertheless, not be entitled to use force. *State* v. *Koonce,* 89 N. J. Super 169, 214 A. 2d 428. *Clearly, if the arrest was lawful, the accused should not have resisted, regardless of his assessment of the arresting officer's personal feelings and motives.* Malice might cause one to use more force than was necessary, but that is not the issue here. The tendered instruction, therefore, was not applicable to the law in evidence in the case and would therefore have been properly refused. *Finton* v. *State* (1963), 244 Ind. 396, 193 N. E.

2d 134; *Nix* v. *State* (1960), 240 Ind. 392, 166 N. E. 2d 326; *Kennedy* v. *State* (1935), 209 Ind. 287, 196 N. E. 316.

(2) At the close of the officer's testimony, the defendant moved to strike his entire testimony by reason of his failure to give a "Miranda warning" prior to the aforementioned sobriety test. Defendant contends that the arrest was predicated upon self-incriminating evidence thusly illegally obtained and cites *Miranda* v. *Arizona* (1966), 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 and *Spitler* v. *State* (1943), 221 Ind. 107, 46 N. E. 2d 591. In *Spitler, supra,* the court found that the appellant had waived any objection to submitting to a drunkometer test and that the results were therefore admissible into evidence. The court did state that Appellant had been told, prior to the test, that he had a constitutional right to refuse. This case, however, does not stand as authority for the proposition that such a warning must be given prior to testing. More recently, in *Wells* v. *State* (1959), 239 Ind. 415, 158 N. E. 2d 256, we held:

"The law presumes (subject to proof to the contrary) that a consent to a physical examination or to make a confession is 'freely and knowingly' given even though the person giving such consent is intoxicated."

We acknowledge that *Miranda* v. *Arizona, supra,* would override the foregoing statement insofar as confessions are concerned. It specifically precludes the admission into evidence of a confession obtained during in-custody interrogation without a showing of the knowing and intelligent waiver required to relinquish constitutional rights. The exclusion, however, has not been applied to evidence of a physical nature, as Defendant would have us do. We believe that the case of *Schmerber* v. *California* (1966), 384 U. S. 727, 86 S. Ct. 1826, 16 L. Ed. 2d 908, is dispositive of this argument. There the Court held that it was not violative of the accused's right against self-incrimination to extract blood from a blood alcohol test against

his will. The court also held that this did not violate his Fourth Amendment right to counsel. The Court described what was protected by the Fifth Amendment privilege:

"It is clear that the protection of the privilege reaches an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers. Boyd v. United States, 116 US 616, 29 L ed 746, 6 S Ct 524. On the other hand, both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture.[8] The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony', but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it.

Although we agree that this distinction is a helpful framework for analysis, we are not to be understood to agree with past applications in all instances. There will be many cases in which such a distinction is not readily drawn. Some tests seemingly directed to obtain 'physical evidence,' for example, lie detector tests measuring changes in body function during interrogation, may actually be directed to eliciting responses which are essentially testimonial. To compel a person to submit to testing in which an effort will be made to determine his guilt or innocence on the basis of physiological responses, whether willed or not, is to evoke the spirit and history of the Fifth Amendment. Such situations call to mind the principle that the protection of the privilege 'is as broad as the mischief against which it seeks to guard,' Counselman v. Hitchcock, 142 US 547, 562, 35 L ed 1110, 1114, 12 S Ct 195.

\* \* \* \* \*

8. The cases are collected in 8 Wigmore, Evidence § 2265 (McNaughton rev. 1961). See also United States v. Chibbaro, 361 F 2d 365 (CA3d Cir 1966) ; People v. Graves, 64 Cal. 2d 208, 49 Cal Rptr 386, 388, 411 P2d 114 (1966) ; Weintraub, Voice Identification, Writing Exemplars and the Privilege Against Self-Incrimination, 10 Vand L Rev 485 (1957)."

We do not believe the evidence elicited by the tests given to Defendant could be regarded as anything but "real or physical evidence" under the principles expressed in *Schmerber, supra,* and we hold that the failure to advise an accused, held in custody, of his Fifth Amendment rights does not preclude the utilization of real or physical evidence then obtained as opposed to that which may be directly or indirectly testimonial in character.

(3) Defendant's motion for directed verdict was predicated upon the alleged illegality of the arrest, and this was assigned, as well, as an additional ground for striking the officer's testimony. Defendant contends, under this assignment, that since the offense for which the arrest was attempted was a misdemeanor, not committed in the presence of the officer, he had no right to arrest without a warrant. The record is not clear whether the attempted arrest was for public intoxication or for operating a motor vehicle while under the influence of intoxicating liquor. In either event, the evidence is clear that both offenses were committed in the officer's presence. The fact that the officer had not yet ascertained that the defendant was intoxicated at the time he saw him driving the vehicle in the public highway does not alter the fact that he did see him commit the offense. The officer was entitled to utilize all knowledge acquired prior to the arrest, including such as may have been acquired subsequent to the time he saw the offense committed, in determining whether or not what he had just observed did, in fact, constitute an offense.

If the attempted arrest was for public intoxication, as Defendant suggests, we, nevertheless, think his argument that he was not in a public place is without merit. He was, at that instant, at an automobile service station, a business establishment open to the public. Although private property, this was, nevertheless, either a "public place or place of public resort" within the meaning of the statute proscribing the offense. (Acts of 1935, ch. 226, § 31 [11]; Acts of

1937, ch. 197, § 7 [11], 1956 Repl. Burns Ind. Stat. Ann. § 12-611.) A gasoline service station was held to be a public place within the ambit of a similar statute in *State* v. *Fenner* (1965), 263 N. C. 694, 140 S. E. 2d 349. Moments earlier, the defendant was seen in his automobile within a public highway. We cannot assume that his condition had changed in the interim. A truck parked on the side of the highway was held to be a public place under the same statute in *Miles* v. *State* (1966), 247 Ind. 423, 216 N. E. 2d 847.

Finding no error, the judgment of the trial court is affirmed.

Arterburn, C. J. and DeBruler, Givan and Hunter, JJ., concur.

NOTE.—Reported in 281 N. E. 2d 102.