**AMERICAN GYPSUM TRUST et al.,**
**Plaintiffs and Respondents,**

v.

**GEORGIA–PACIFIC CORPORATION,**
**Defendant and Appellant.**

No. 13919.

Supreme Court of Utah.

Sept. 10, 1975.

Keith E. Taylor, Parsons, Behle & Latimer, Salt Lake City, for defendant and appellant.

Ken Chamberlain, Richfield, Dennis McCarthy, Clifford L. Ashton, C. Keith Rooker, Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, for plaintiffs and respondents.

HENRIOD, Chief Justice:

Appeal from a judgment in favor of the Lessors for moneys due under a gypsum mineral lease. Affirmed, with costs to plaintiffs.

This is a sequel to a like-titled case found in 30 **Utah 2d** 6, 512 P.2d 658 (1973). It seems **to be** nothing more than an accounting for rentals based on the same lease, the same method of computation, the same agreements and reasoning —substantially repetitive of that which prevailed in the prior case, consisting of about 2,500 pages of record, pleading, argument, and time consuming theorems of accounting practice.

There the trial court accepted and applied the accounting formulae employed by the plaintiff's accountant, a Mr. Caldwell, whose expertise was not seriously challenged by the parties or the court. The position of defendant's accountant, whose qualifications equally were uncontested, was not accepted. The position of defend-

ant is that its proffer of evidence in this case erroneously was rejected. In this respect, defendant's claim of so-called "rejection" of defendant's so-called "proffer" of evidence was not a rejection at all, but contrariwise was an invitation for defendant to call its witnesses. The suggestion that the court "refused" to entertain the testimony, seems to be unwarranted, since there was a dozen or more responses from the court that in spite of the protestations of defendant to the effect that, even though accepted by the court in the prior case, the accounting recipe that resulted in admissibility of Exhibits 139–141, was basically wrong, he nonetheless was going to adhere to the language of the decision in the prior case that affirmed the trial court. The trial court had ample reason to take such a stand, since clearly we said that

> We conclude that the money judgment of the trial court be and it hereby is affirmed, as is the rest thereof, including that portion sustaining the accounting procedure reflected in Exhibits 139–141, but excepting that portion of the "requirements" portion of the lease discussed hereinabove. That part is reversed *with instructions to modify the same in consonance with the observations and opinion stated here.*

In the light of such language it is quite understandable that he should have stated to defendant's counsel that "I've stated all along that I have no objection to him testifying . . . " and "I don't want there to be any confusion about that," while at the same time reiterating time and again that he was going to follow the interdiction of the Supreme Court. In light of what we have said in Paragraph second above in this opinion, consistency urges that the trial court was, or opined that he was right, and was proved to be right (else we were wrong)—a contraversion of which would call for some kind of confession of error, on our part—which we deem

unwarranted,—and without serious contradiction.

Suffice it to say, however, that the approach and conclusions of Caldwell and others of his profession in the prior case were bottomed on the same type of data and rationale in calculating the royalties payable in the instant case, and paid by predecessor lessees (and as such, assignors of defendant)—*and by defendant itself, for a while,* if you please,—without any complaint or contention by defendant or its four predecessors in interest. We think we do not overwork language, when we attach significance to the fact that only after defendant fired its accountant that actually had accepted the established accounting method, it substituted another, apparently inclined toward a system more favorable to defendant, who suggested a brand new type of accounting advocacy, adopting a different kind of bookkeeping system. That system, by some sort of legerdemain, professed employment of sound accounting principles designed to minimize defendant's royalty obligation. That contention, if purchased by the court, would have given defendant an almost rent-free bonanza. This, even to the point suggested by defendant in the prior case, that it actually was a victim of overpayment of royalty, that miraculously would have wiped out a piddly minimum payment reserved in the lease. All this only would have afforded to the plaintiffs a parsimonious payment in satisfaction of a piece of paper that for a quarter century had contemplated, and actually produced some sort of income from material concededly extracted by defendant, presumably for profit, which for many years had averaged lessors a stipend of $90,000 per annum.

It appears that the defendant has overlooked the fact that the Exhibits 139–141 were the work product of the method of accounting employed before 1965, which pre-1965 method defendant insisted upon in

this case, *and to which insistence plaintiffs consented.* It would appear that defendant's Bill of Divorcement here asks for a reduction in alimony based on figures extant before the Decree, on the grounds that the Decree is no criterion or evidence to reflect the true intent, purpose and established conduct and fiscal phenomena of a troubled sequel to a fiscal honeymoon.

■ After a comparative examination of the records in the two cases, we are constrained to believe and hold that the instant case is substantially the same in pleading and proof and conclusion as was the other. Essentially they are arithmetic Siamese twins based on facts and figures by Caldwell, (and others before) and we can only conclude to be consistent with our prior enunciation, that the result here is determinable by the same standard and method of proof as maintained before, whether arrived at by a sharpened pencil, a minicalculator or an abacus.

It is interesting to note that the complaints voiced here by defendant substantially were urged on objections made to the motion by plaintiffs to amend the judgment in the prior case, to conform to the sanctions of our court in that case, to which plaintiffs bowed and which objections were filed on November 12, 1973, and either overruled or ignored on November 14, 1973, when the amendments were adjudged. Defendant did not pursue anything further until the plaintiffs, about six months later, filed the second suit to recover rents,—after which the defendant belatedly, we think, repeated its previous objections in a lawsuit swimming in the same kind of water in a different kind of lake.

Defendant's errors claimed on appeal in the prior case, in its petition threat for rehearing, and in this second case, seem to us to be so affinitive in tenor and text as to justify our affirmance of the judgment here, without resort to another late show re-run of a scenario with a 2,500-page script.

At this juncture, it might be suggested that:

1) Defendant's "Statement of Facts" in the instant case is a body of *facts* wedded to a heavier argument of *issues,*—which argument of the *issues,* is repeated later in its brief.

2) Defendant's claim (Part I) that the lower court committed "grievous" error in saying that he would use "the procedure used in Exhibits 139 through 141" of the first case is not well-founded. This court stated in the previous case that which we quoted above in the third paragraph starting with "We conclude that . . ." and there is nothing in this case to support defendant's urgence that such statement was emasculated by some other parts of the opinion. As a matter of fact, our statement before reflects that the exhibits mentioned were the work product of what we at least impliedly conceded were "sound accounting principles"—and which now the defendant seeks to destroy by a different interpretation, without having convinced us in the first case and in its petition for rehearing that counsel's ability and accuracy in construing our language was paramount to and controlling over our own intention to pronounce. In this connection we simply must confess that we do not have any inclination to indulge in any protracted discussion to convince defendant that it knows better what we said than what we said,—although it may win a debate with some etymologists as to langu ge used. Particularly is this significant when counsel for defendant conceded in the prior case in its printed and somewhat splenetic but rejected petition for rehearing,—that:

> The majority opinion, by eliminating . . . Finding 27 and yet approving the formula in Exhibits 139–141 *for calculating future royalties,* has thrown the issues at trial into confusion and the findings into inconsistency.

The defendant's argument here seems to be that defendant need not, nor can we question the principle of res judicata.

3) The defendant misses the point in urging that we wiped out Finding of Fact No. 27, which thereafter could not be amended. We wiped out the *"idea"* that the lease "required" activity in an existing market even though it might be unprofitable. The minimum rental was a substitute for inactivity, and if the defendant chose not to barge into an unprofitable market it had a choice: Pay the minimum. Here it chose to enter a market which proved profitable, *under the lease,* to *both lessor and lessee.* We invited amendment of No. 27, or a substitute, or call it another number, by saying very specifically that everything was affirmed save a provision in the Findings not discoverable in the wording of the lease, since the lease said nothing about forcing an unwilling lessee into an unprofitable market, not only to deplete lessor's resources but bankrupt the lessee. Only a highly sensitive person on either side would ask for specific performance of a lease based solely on volume of output and unrealistic loss factors.

This was a "profit" lease, neither a tax shelter "loss" debenture, nor a vehicle for destruction of royalties.

■ The question raised by defendant about *reserves* has nothing to do with this case, since an action to recover past due rentals has nothing to do with future rentals or reserves,—a matter reserved to the sufficiency of the day thereof. To decide otherwise would be to indulge in an anticipatory rainbow with a full or empty pot of gold at its termini.

It would appear that a case involving a simple accounting problem, by untimely urgence of immaterial issues, developed in a protracted effort to indulge the luxury of a retrial of an adjudicated cause and an untimely effort to reappraise and reinterpret a written document,—already interpreted,—all in a very understandable attempt to minimize rentals,—and cancel out unpalatable provisions in an erstwhile enforceable leasehold,—does not merit a retrial of the case but only one bringing up to date the amount of rentals due, attorneys' fees and costs.

TUCKETT and MAUGHAN, JJ., concur.

ELLETT, Justice (dissenting):

I dissent in this case for the reasons given in my opinion in the former case wherein I pointed out the correct accounting procedure as set out in the contract between the parties in case of a disagreement.