Robert CORNELL, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 2–179A9.

Court of Appeals of Indiana, Second District.

Jan. 15, 1980.

Rehearing Denied Feb. 22, 1980.

Nancy E. Gardner, Fowler, for appellant.

Theodore L. Sendak, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Judge.

Defendant-appellant Robert Cornell appeals his conviction of Public Intoxication [1] raising five issues for our review. However, we need only address Cornell's contention the evidence failed to reveal he was in a "public place or a place of public resort."

We reverse.

The evidence most favorable to the State reveals: Ray Brummett is a farmer residing in a rural area about four miles west of Brookston, White County. On December 1, 1977 Ray's son, Rex, arrived for work on the farm at approximately 6:30 A.M. and informed Ray "there is a fellow down the road that might need some help." Ray then accompanied Rex to Morehouse Road where Rex had observed a pick-up truck parked off the road. They walked up to the vehicle and observed Cornell inside, apparently asleep, with a shotgun in his lap. After unsuccessfully trying to awaken Cornell by pounding on the windows, Ray contacted his wife over the citizen's band radio and told her to phone the police.

Subsequently, State Police officer Corso arrived at the scene. When Corso's attempts to awaken Cornell were unsuccessful, he pried open a window and removed Cornell from the truck. Cornell's clothing was disarranged, his eyes were red and glassy, his speech was incoherent, he had an odor of alcohol about him, and he needed assistance in walking. Corso placed Cornell under arrest for public intoxication and transported him to the White County jail.

The critical issue is whether Cornell was found intoxicated in a public place or a place of public resort within the meaning of IC 7.1-5-1-3, *supra*. The place Cornell was found is near a rural "T" intersection where a worn-down lane leads into a farmer's field. Cornell's pick-up truck was found parked off this lane, "just into the edge of the field," approximately twenty to thirty feet from the intersection.[2] No inquiries

1. IC 7.1-5-1-3 (Burns Code Ed., Supp.1977), which provides:
   Public intoxication—Prohibition—Penalty. —It is unlawful for any person to be found in a public place or a place of public resort in a state of intoxication. A person who violates a provision of this section is guilty of a misdemeanor, and upon conviction shall be fined an amount of not less than one dollar [$1.00], nor more than one hundred dollars [$100], to which may be added inprisonment for a period of not more than six (6) months. [IC 1971, 7.1-5-1-3, as added by Acts 1973, P.L. 55, § 1, p. 290.]
   The language "or a place of public resort" was added by Acts 1935, ch. 226, § 31 (11), p. 1155. Under the statute in existence before 1935, the offense of public intoxication was committed when an individual was "found in any public place in a state of intoxication." Acts 1905, ch. 169, § 572, p. 720.

2. Contrary to the dissent's statement at page 1339, this is " . . . a case in which the defendant parked his vehicle in a private country lane."
   The dissent at page 1338 refers to the only testimony which describes the site as something other than twenty to thirty feet from the public roadway. However, the entire line of questioning adds clarity to the testimony.
   MR. McLAUGHLIN: How far off the road was the truck?
   A. How far off the road was the truck, about twenty feet, I would assume.
   Q. O.K. On what?
   A. On—

Q. A lane or small road or something—
A. Well it's just where farm people enter into a field, just setting in the edge of a field.
Q. O.K. Do you know whose property it is?
A. No, I am not sure. I know the guy that farms it some Brunton farms it but I don't know who owns it.
Q. O.K. I have no other questions.
Mr. Goss: Is there any barricades or blockades that Mr. Cornell was behind in his vehicle? I will strike that question.
A. Please rephrase it, I don't understand it.
Q. O.K. You said that Mr. Cornell was in a little roadway or little lane in his vehicle? Is there a gateway that he had to go through to get to that place with his vehicle?
A. No, this is just kinda of a worn down place to turn in, it's not really a gateway, it's just where farmers had went back and forth there, there is no roadway nor gateway there, just into the edge of the field where—
Q. O.K. Just basically on the edge of the road, on the berm, is that correct?
A. Right.
Q. O.K. I have nothing further.
Thus Mr. Brummett describes the truck as twenty feet off the road; Trooper Corso described it as thirty feet; it is only the prosecutor, by an improper but unobjected-to question, who describes its position as "Just basically on the edge of the road on the berm, is that correct?"

We do not, and indeed cannot, reweigh the evidence. We do hold Mr. Brummett's affirmative response to the prosecutor's question is *not* evidence of probative value. *See, Smith v.*

were made concerning ownership of the field or whether Cornell had permission to be in the field.

Thus, the issue we decide is whether a person sitting in a motor vehicle parked off a lane entering an open field twenty to thirty feet from the traveled portion of a road is in a "public place or a place of public resort" as contemplated by the public intoxication statute, IC 7.1–5–1–3.[3]

The State relies upon *Heichelbech v. State*, (1972) 258 Ind. 334, 281 N.E.2d 102, and *Miles v. State*, (1966) 247 Ind. 423, 216 N.E.2d 847, in support of its contention Cornell was in a public place or a place of public resort. The State is also of the opinion since "Appellant had been on the road; he had to be on it to reach the point where he was found," then any "rule that an intoxicated driver may claim immunity from the law by crossing to the edge of an unfenced field adjacent to a public road is anything but the spirit of the law."

It is the opinion of this Court that neither *Heichelbech v. State, supra,* nor *Miles v. State, supra,* support the State's contention Cornell was found in "a public place or a place of public resort." *Miles* involved an

appeal from a conviction of public intoxication. The facts were that a police officer was looking for the appellant, having "apparently been informed of a situation involving some danger," when he observed the appellant's tractor-trailer rig parked on the berm, "approximately three or four feet from the traveled portion of a busy highway." Appellant was in the cab of the truck "slumped over the wheel with his head down." A window of the cab was down and the engine was running. The officer asked to see the appellant's license and then had him exit the truck. After observing signs of intoxication, the officer arrested appellant for public intoxication.

The first contention the appellant raised in *Miles* was because no offense was committed in the officer's presence the request to step out of the truck was an illegal search resulting in an improper arrest and, therefore, all evidence connected with it should have been suppressed. In addressing this contention, the court stated police officers "have a right and duty to make reasonable investigation of situations which pose possible hazards for motor vehicle traffic," and the officer's investigation was rea-

---

State, (1979) Ind., 386 N.E.2d 1193; *Gaddis v. State*, (1969) 253 Ind. 73, 251 N.E.2d 658.

Indeed, in its brief the State alleges the pickup "was actually sitting twenty to thirty feet from said intersection on a strip used by farmers to enter an open field, there being no fence, barrier or ditch between the road and the field."

3. Although no Indiana decisions have defined "a place of public resort," several early decisions defined a public place as: "A public place is one where all persons have a right to go." *State v. Sowers*, (1876) 52 Ind. 311, 312. *See also State v. Welch*, (1882) 88 Ind. 308; *State v. Waggoner*, (1876) 52 Ind. 481; *State v. Tincher*, (1898) 21 Ind.App. 142, 51 N.E. 943. *See generally* Annot. 8 A.L.R.3d 930 (1966). In this regard, it does not appear as though the legislature's inclusion of "or a place of public resort" has changed prior case law considering the question of what constitutes a public place. Rather, it appears as though the additional language merely clarifies that a public place encompasses places the public, *i. e.*, all persons, have a right of frequent assembly. *Cf.* BLACK'S LAW DICTIONARY 1475 (Rev. 4th ed. 1968) (defines "resort" as, "[a]" place of frequent assembly, a haunt."); Websters Third New International Dictionary 1934 (Unabridged

ed. 1976) (defines "resort" as, *inter alia*, "a place to which one betakes himself or persons go habitually: a place of frequent assembly.").

Indeed, an early appellate court decision, by *dicta*, recognized a public place encompasses places where all persons have a right of frequent assembly, *i. e.*, a place of public resort. *See State v. Tincher, supra,* wherein the Court of Appeals quotes the following statement from *Parker v. State*, 26 Tex. 204:

A 'public place' does not mean a place devoted solely to the uses of the public; but it means a place which is in point of fact public, as distinguished from private,—*a place that is visited by many persons, and usually accessible to the neighboring public.* (emphasis added). 21 Ind.App. at 144, 51 N.E. at 944.

Further evidence prior case law considering the question of what constitutes a public place has not been changed by the inclusion of "or a place of public resort" is evidenced by the fact that the more recent decisions continue to speak in terms "a public place" rather than "a public place or a place of public resort." *See e. g. Miles v. State*, (1966) 247 Ind. 423, 216 N.E.2d 847; *Wilhite v. State*, (1947) 225 Ind. 45, 71 N.E.2d 925.

sonable under the circumstances of this case. In support of the reasonableness of the investigation the court pointed out the "truck was parked very near the traveled portion of a heavily traveled highway," with the motor still running, and stated at 247 Ind. at 425, 216 N.E.2d at 849:

> Such a situation seems to demand investigation not only for the safety of others but for the possible safety of the driver himself.

The second contention raised in *Miles* was, "the appellant was in his truck cab, and was therefore not in a public place." In addressing this contention the court noted there "is some authority to uphold a conviction under this statute of a person in a motor vehicle at the time of the arrest," citing *Winters v. State*, (1928) 200 Ind. 48, 160 N.E. 294. In holding under the circumstances of the case "the appellant was in a public place within the meaning of the statute," the court pointed out, "appellant was in the cab of a truck with the window open, approximately three or four feet from the traveled portion of a busy highway."

*Heichelbech v. State, supra,* involved an appeal from a conviction of committing bodily injury upon a police officer while resisting arrest. The facts of the case were that a police officer, after receiving a radio dispatch that the appellant was intoxicated and driving a motor vehicle on the same road he was on, turned his vehicle around when appellant passed him in the opposite direction. The officer followed appellant but, before he was able to stop him, appellant entered a service station, parked his vehicle next to a fuel pump and exited the vehicle. Appellant failed an on-the-scene sobriety test and an altercation ensued when the officer requested appellant accompany him to headquarters for a breathalyzer test.

Since the record was unclear as to whether the attempted arrest was for public intoxication or for operating a motor vehicle while under the influence of alcohol, in addressing appellant's contention the officer had no authority to arrest him without a warrant for misdemeanor not committed in the presence of the officer, the *Heichelbech*

court held that "[i]n either event, the evidence is clear that both offenses were committed in the officer's presence." 258 Ind. at 340, 281 N.E.2d at 105.

The *Heichelbech* court went on to address appellant's contention the attempted arrest was for public intoxication and that "he was not in a public place," and held, albeit *dicta,* an automobile service station, a business establishment open to the public, although private property, was, nevertheless, "either a 'public place or a place of public resort' within the meaning of (the public intoxication statute)." 258 Ind. at 340, 281 N.E.2d at 106. In support of this conclusion the court stated:

> A gasoline service station was held to be a public place within the ambit of a similar statute in *State v. Fenner* (1965), 263 N.C. 694, 140 S.E.2d 349. Moments earlier, the defendant was seen in his automobile within a public highway. We cannot assume that his condition had changed in the interim. A truck parked on the side of the highway was held to be a public place under the same statute in *Miles v. State* (1966), 247 Ind. 423, 216 N.E.2d 847.

258 Ind. at 341, 281 N.E.2d at 106.

Although *Miles* is pertinent, the case *sub judice* is distinguishable. In the first instance, *Miles* is supportive of Officer Corso's investigation of Cornell. The Brummetts were unable to arouse Cornell and were unsure as to his condition. Under these circumstances, Corso had a right to make a reasonable investigation for the possible safety of Cornell. Moreover, the fact Cornell was in his motor vehicle would not otherwise preclude a conviction for public intoxication. The fact remains, however, that, unlike the appellant in *Miles,* Cornell was not on the berm approximately three or four feet from the traveled portion of a busy highway; rather, Cornell was parked off a private lane entering private property approximately twenty to thirty feet from the traveled portion of a rural country road.

Furthermore, *Heichelbech* is inapposite to the case at bar. While an automobile service station may be a public place or a place of public resort, the same cannot be said of

a private lane entering private property. By its very nature, a gasoline service station, during its business hours, is open to the public generally to come utilize the services it has to offer. In this case, however, there is no evidence the private lane entering the field where Cornell was found is open to, or utilized by, the public generally.

Moreover, the *Heichelbech* court's reliance on *Miles* appears to support the State's contention an intoxicated driver may not claim immunity from the public intoxication statute by leaving the highway and entering onto private property. Such proposition, however, is inapplicable to the case at bar. There is no evidence Cornell was seen in an intoxicated condition on the road before he parked his pick-up truck in the place he was found, nor is there any evidence from which such an inference may be drawn. To the contrary, from the evidence it is just as easy to infer Cornell parked his truck in the place he was found before he imbibed any spirits.

An analysis of the public intoxication statute in light of its objective does not support the State's position. In *State v. Seiver*, (1889) 117 Ind. 338, 20 N.E. 245, our Supreme Court stated at 117 Ind. at 340, 20 N.E. at 246, 246–247:

> The purpose of the law is to protect the public from the annoyances and deleterious effects which may and do occur because of the presence of persons who are in an intoxicated condition.

We do not see how this objective would be frustrated by excluding from the definition of a public place or a place of public resort the circumstances of this case.

Indeed, the public intoxication statute has never been interpreted to encompass private places not open to the public generally. In *State v. Moriarity*, (1881) 74 Ind. 103, our Supreme Court held a "public street" is "a public place" within the meaning of the public intoxication statute.[4] The court went on to note, however, that:

The term "street" does not mean private ways, nor does it apply to roads or ways owned by private corporations.

74 Ind. at 105.[5] See also *State v. Sowers*, (1876) 52 Ind. 311, at 312 ("The private house of a gentleman, at which he gives or holds a social party, cannot, within the meaning of the statute, or in any sense of society or government, be understood to be a public place"); *State v. Tincher, supra*, (defendant found intoxicated in the front yard of a private residence where an ice cream supper and a dance was being held was not in a public place).

Moreover, the courts of other jurisdictions have come to similar conclusions. For example, in *Mayes v. State*, (1945) 80 Okl. Crim. 52, 162 P.2d 822, the defendant had driven down a private road in a hay meadow and his car got stuck. The court held a hay meadow was not a public place, under the terms of a statute similar to Indiana's, and " it was not a violation of the law for a person to be drunk in such hay meadow." 156 P.2d at 824. See also *Ex parte Barnett*, (1953) 96 Okl.Crim. 254, 252 P.2d 496. Similarly, in *Hutchinson v. State*, (1911) 8 Ga. App. 684, 70 S.E. 63, an appellant found intoxicated on the porch of a store fifteen to thirty feet from the public road was found not to be in violation of the public intoxication statute. See also *Finch v. State*, (1960) 101 Ga.App. 73, 112 S.E.2d 824.

In *Yarbrough v. Commonwealth*, (1927) 219 Ky. 319, 292 S.W. 806, the Supreme Court of Kentucky held it was reversible error to convict the defendant for violation of the public intoxication statute where the defendant was found peacefully drunk on a hillside. See also *Cawood v. Commonwealth*, (1929) 229 Ky. 522, 17 S.W.2d 453, (defendant found drunk more than one hundred yards from a public road was not in violation of the public intoxication statute). *But see Berry v. City of Springdale*, (1964) 238 Ark. 328, 381 S.W.2d 745.

---

4. See also *Rosenstein v. State*, (1894) 9 Ind. App. 290, 36 N.E. 652.

5. Cf. *Application of Hendrix*, (1975) Okl.App., 539 P.2d 1042 (holding the phrase "private road" as used in the public intoxication statute, similar to Indiana's, means privately owned roads open to the public and does not include a private residential driveway).

We hold that under the circumstances of this case Cornell was not in a public place or a place of public resort within the meaning of IC 7.1–5–1–3, *supra*. Thus, the judgment of the trial court is reversed.

SULLIVAN, J., concurs.

BUCHANAN, C. J., dissents with opinion.

BUCHANAN, Chief Judge, dissenting.

I respectfully dissent on the grounds that there was sufficient evidence to sustain the conviction.

We who have worshipped so long at the shrine of the trial court's unfettered weighing of the evidence, will affirm a conviction if there is evidence of probative value from which the trier of fact could infer that the defendant was guilty beyond a reasonable doubt. *Priest v. State* (1979), Ind., 386 N.E.2d 686; *Stubblefield v. State* (1979), Ind., 386 N.E.2d 665; *Boyking v. State* (1979), Ind., 385 N.E.2d 1127. And there is such evidence.

On redirect examination, Ray Brummett, an area farmer, testified as follows:

Q. O.K. You said that Mr. Cornell was in a little roadway or little lane in his vehicle? Is there a gateway that he had to go through to get to that place with his vehicle?

A. No, this is just kinda of a worn down place to turn in, it's not really a gateway, it's just where farmers had went back and forth there, there is no roadway nor gateway there, just into the edge of the field where—

Q. O.K. Just basically on the edge of the road, on the berm, is that correct?

A. Right.

State Trooper Tony Corso, who investigated the incident and arrested Cornell, testified:

Q. O.K. And what time did you arrive on the scene?

A. I arrived at the scene approximately 8:00 A.M. in the morning.

Q. What did you observe when you arrived upon the scene?

A. I observed a pick-up truck, a green late model pick-up truck with a wrench on it, parked just off the roadway on the intersection of County Road 500 West and 1300 South.

And later:

Q. O.K. And can you describe the scene of where his vehicle was in relation to that intersection?

A. Yes, sir. The intersection at this location, the land around it was flat, the night before and, or may I say earlier that morning, there had been a light snowfall and the ground added to the snow on the ground at that time, the snow, the ground was white covered with snow. The intersection had no barriers at all between the road and the land adjacent to the road. The vehicle was headed in a South, excuse me, North Northwesterly direction. That would be the intersection looking straight at you, the car's going would be off to my left a pad [sic] into the adjacent area of land to the intersection.

Q. O.K. And is there a road ditch there?

A. No, there is not.

Q. O.K. There is no shoulder, is there a shoulder to the road?

A. Not at that area.

Q. Just roadway or field?

A. Yes, sir.

Q. Is there any fences there?

A. No, sir.

And finally:

Q. O.K. Now at the location, the Defendant's vehicle was located on the scene, is that a place I could go?

A. Yes.

In unwrapping the factual cocoon the trial court could have justifiably found in support of his judgment that the defendant simply pulled to the side of the road in a worn down spot at the entrance to a path into a field. He was either then intoxicated, or subsequently became so; and was in that state when Officer Corso arrested him. In my opinion *Miles v. State* (1966), 247 Ind.

423, 216 N.E.2d 847, controls this case. A citizen in hot pursuit of "demon rum" must do more than pull to the side of the road to escape our public intoxication statute.

This is not a case in which the defendant parked his vehicle in a private country lane. Construing the evidence most favorable to the judgment, he was not in a private place which could be distinguished from the public roadside, such as the front yard of a private residence. *See State v. Tincher* (1898), 21 Ind.App. 142, 51 N.E. 943.

Obviously I would not attribute to the term "public place" the narrow construction embraced by the majority. Indiana case law does not demand such a narrow construction and I am not persuaded by the majority's citation to cases in other jurisdictions.

So I would affirm the conviction.