Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 14 2014, 9:48 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**LEANNA WEISSMANN**
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GEORGE NICHOLS, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 40A05-1402-CR-00076 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE JENNINGS SUPERIOR COURT
The Honorable Gary Smith, Judge
Cause No. 40D01-1307-CM-242

**October 14, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Following a bench trial, George Nichols ("Nichols") was found guilty of operating while intoxicated, a Class C misdemeanor, and public intoxication, a Class B misdemeanor. Nichols was ordered to serve an aggregate term of 180 days, with 176 days suspended, and twelve months of supervised probation. Nichols appeals his convictions, raising two issues for the court's review, which we restate as:

I. Whether the State provided sufficient evidence to prove that Nichols was in a public place at the time of the offense, and

II. Whether the State provided sufficient evidence to prove that Nichols was intoxicated.

We affirm.

**Facts and Procedural History**

In the early morning hours of May 31, 2013, Timothy Collins ("Collins"), a resident of a rural Jennings County neighborhood locally known as Muscatatuck Caverns, heard a man screaming and cursing outside his home. Collins walked outside and observed Nichols, who also lived in Muscatatuck Caverns, pacing up and down the road in front of Collins's house. Nichols appeared to be yelling taunts directed at his neighbors, the other residents of Muscatatuck Caverns. Eventually, Nichols returned to his own house, only to reappear about fifteen minutes later, driving his car down the road, cursing, and screaming for the other residents to come out of their houses and fight with him. Nichols returned to his house again, then appeared for a third time, this time riding a four-wheeled all-terrain vehicle ("ATV"). Nichols was still yelling curses at the houses and was waving what Collins believed to be a rifle. Collins called the police.

2

At approximately 3:00 a.m., Deputy Aaron Green ("Deputy Green") of the Jennings County Sheriff's Department responded to the scene. Two other sheriff's deputies and an Indiana State Police trooper also responded to the scene. When he arrived, Deputy Green did not observe any person matching Nichols's description. He spoke with Collins, who advised Deputy Green to wait for a few minutes. Deputy Green moved his car back from the roadway and turned his engine off. Shortly thereafter, Deputy Green heard an ATV start its engine and approach. Deputy Green observed Nichols ride his ATV towards Collins's house, stop in front of Collins's driveway, and yell, "Come and get you some." Tr. pp. 11-12. Nichols then drove away.

Deputy Green followed Nichols down the road. Another deputy approached from the opposite direction and activated his car's lights when he reached Nichols. Nichols ignored that deputy's order to stop. Deputy Green then activated his overhead lights and Nichols finally stopped his ATV.

Because the dispatcher had advised that Nichols might be armed, Deputy Green made a felony traffic stop, drawing his weapon and ordering Nichols to raise his hands and step off of the ATV. Nichols failed to comply with these instructions, only stepping off of the ATV after Deputy Green repeated his order three or four times. Deputy Green placed Nichols in handcuffs, then searched the ATV for a weapon. He found no weapons, but did discover a three foot-long stick wrapped in fabric.

As he spoke with Nichols, Deputy Green observed the strong odor of alcohol on Nichols's breath. He also noticed that Nichols was having trouble standing and balancing, and that Nichols's speech was slurred, and that he was behaving argumentatively.

Deputy Green believed that Nichols was intoxicated and read the implied consent law to Nichols. Nichols refused to take a chemical breath test or any field sobriety tests. Deputy Green then arrested Nichols and transported him to the Sheriff's Department.

On July 5, 2013, the State charged Nichols with Class C misdemeanor operating a vehicle while intoxicated, Class B misdemeanor public intoxication, and a Class C infraction for refusing to submit to a breath test or chemical test. The trial court held a bench trial on December 23, 2013 and found Nichols to be guilty of Class C misdemeanor operating a vehicle while intoxicated and Class B misdemeanor public intoxication. After the January 27, 2014 sentencing hearing, the trial court sentenced Nichols to thirty days for the operating while intoxicated conviction and 180 days for the public intoxication conviction, to be served concurrently. The trial court suspended 176 days of the sentence and ordered Nichols to serve twelve months of supervised probation.

Nichols now appeals.

**Discussion and Decision**

Nichols argues that there was insufficient evidence to sustain his convictions. Specifically, he argues that the State failed to provide sufficient evidence to prove that he was intoxicated or that he was in a public place. Our standard of review in such cases is well settled. We consider only the probative evidence and reasonable inferences supporting the judgment. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess the credibility of witnesses or reweigh evidence. Id. We will affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." Id. (quoting Jenkins v. State, 726 N.E.2d 268, 270 (Ind.

4

2000)). "The evidence is sufficient if an inference may reasonably be drawn from it to support the [judgment]." Id. (quoting Pickens v. State, 751 N.E.2d 331, 334 (Ind. Ct. App. 2001)).

### I. Public Place

The offense of public intoxication is governed by Indiana Code § 7.1-5-1-3, which provides that "it is a Class B misdemeanor for a person to be in a public place or a place of public resort in a state of intoxication caused by the person's use of alcohol or a controlled substance." Thus, the State was required to prove that Nichols was intoxicated and was in a public place.

The purpose of the prohibition against public intoxication is to protect the public from the annoyances and deleterious effects which may and do occur because of the presence of persons who are in an intoxicated condition. Wright v. State, 772 N.E.2d 449 (Ind. Ct. App. 2002). "The term 'public place' is not defined by the public intoxication statute." Id. at 454. This court has held, however, that a "public place," for purposes of the public intoxication statute, does not mean space devoted solely to the use of the public. Id. at 449. Instead, it means any place that is not private, i.e., any place that is visited by many persons, and usually accessible to the public. Id. It is well established that a private residence, including the grounds surrounding it, is not a public place. Moore v. State, 634 N.E.2d 825, 827 (Ind. Ct. App. 1994).

Nichols argues that the road on which he and Collins live and from which he taunted his neighbors is a private road, and therefore, he was not intoxicated in a public place. To support his argument, he cites Cornell v. State, 398 N.E. 2d 1333 (Ind. Ct. App.

5

1980), a case where this court reversed the defendant's conviction for public intoxication after concluding that the defendant, who was discovered unconscious in the cab of his pickup truck, parked to the side of a private lane leading to a private residence, twenty to thirty feet from the traveled portion of a rural country road, was not in a "public place" for purposes of the public intoxication statute. See id. at 1336. The court noted that "[t]here is no evidence the private lane entering the field where Cornell was found is open to, or utilized by, the public generally." Id. at 1337. The court also observed that

> [t]here is no evidence Cornell was seen in an intoxicated condition on the road before he parked his pick-up truck in the place he was found, nor is there any evidence from which such an inference may be drawn. To the contrary, from the evidence it is just as easy to infer Cornell parked his truck in the place he was found before he imbibed any spirits.

Id. The court cited Yarbrough v. Commonwealth, (1927) 219 Ky. 319, 292 S.W. 806, where the Kentucky Supreme Court reversed the defendant's public intoxication conviction after noting that the defendant was found merely peacefully drunk on a hillside. Id.

The facts of this case are easily distinguishable from those in Cornell. Here, the evidence established that, though considered by residents to be a private area, no gates or guards restricted public access to the area, and the road from which Nichols taunted his neighbors was freely accessible to the public. Also, unlike the defendant in Cornell, Nichols was not arrested after being discovered asleep inside his vehicle, parked off of a private lane and twenty to thirty feet away from the public road. Instead, he walked, drove, and rode his ATV up and down the road in his neighborhood, yelling and cursing at his neighbors. Under these facts and circumstances, we conclude that Nichols was in a

6

public place for purposes of the public intoxication statute. See State v. Jenkins, 898 N.E.2d 484 (Ind. Ct. App. 2008) (holding that the outdoor, unenclosed courtyard area of the defendant's apartment complex was a public place, where the courtyard was not enclosed by a gate or fence, the public was free to come and go as they pleased in the courtyard, the courtyard was next to the complex's parking lot, the area of courtyard in which defendant was standing at time or arrest was not unique to his lease, and visitors at the complex did not have to wear identification).

## II. Intoxication

Nichols next argues that the State failed to prove that he was intoxicated, as required to support his convictions for operating while intoxicated and public intoxication. Indiana Code section 9-13-2-86 defines "intoxicated" as "under the influence of alcohol . . . so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties." See Fought v. State, 898 N.E .2d 447, 451 (Ind. Ct. App. 2008) (citing Ind. Code § 9-13-2-86). The State need not present separate proof of impairment of action, impairment of thought, and loss of control of faculties to establish an individual's intoxication. Curtis v. State, 937 N.E.2d 868, 873 (Ind. Ct. App. 2010). Rather, a person's impairment is to be determined by considering his capability as a whole, not component by component, such that impairment of any of these three abilities equals impairment. Id. And such impairment can be established by evidence of: (1) the consumption of significant amount of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; (6) failure of field sobriety tests; and (7) slurred speech. Fought, 898 N.E.2d at 451.

The State presented sufficient evidence to demonstrate that Nichols was intoxicated at the time of the offense. Deputy Green testified that, based upon his training and experience, it was his opinion that Nichols was intoxicated. This itself is sufficient to support Nichols's convictions. See Wright v. State, 772 N.E.2d 449, 460 (Ind. Ct. App. 2002) ("With respect to the sufficiency of the evidence upon the element of intoxication, it is established that a non-expert witness may offer an opinion upon intoxication, and a conviction may be sustained upon the sole testimony of the arresting officer."). Deputy Green also testified that he observed Nichols shouting and cursing from the middle of the neighborhood road. He stated that Nichols's balance was unsteady, his speech was slurred, he smelled of alcohol, and he was non-responsive and uncooperative with officers. All of this evidence further supports the trial court's determination that Nichols was intoxicated. See Fought, 898 N.E.2d at 451 (concluding that evidence was sufficient to show that defendant was intoxicated at the time of his arrest, where police officers testified that they smelled a strong odor of alcohol emanating from the interior of defendant's vehicle and from defendant's breath, defendant's clothes were disheveled, defendant was uncooperative, defendant had extremely slurred speech and was unsteady on his feet, defendant's eyes were red, watery, and bloodshot, and defendant was unsure how he had reached his current location).

Nichols's argument is simply a request for this court to reweigh the evidence and judge the credibility of a witness, which we will not do. Thus, we conclude that the State presented sufficient evidence to show that Nichols was intoxicated.

**Conclusion**

For all of these reasons, we conclude that the State presented sufficient evidence to support Nichols's convictions for Class C misdemeanor operating a vehicle while intoxicated and Class B misdemeanor public intoxication.

Affirmed.

VAIDIK, C.J., and FRIEDLANDER, J., concur.